# ALBERT W. HARRISON *vs.* McLAUGHLIN BROTHERS, Inc.

*Building Contract—Agreement to Pay Percentage of Cost of Construction for Supervising the Erection of Building—Recovery for Extra Work—Pleading—Evidence—Contract Designed to Defraud Public.*

Defendant's contract with the plaintiff provided that the latter should prepare the plans for a building, supervise its erection, purchase materials and employ labor. The defendant agreed to furnish the money for the purchase of materials and the payment of labor, and also to pay the plaintiff for all services to be rendered, an amount equal to ten per cent of the total cost of the building. A recital in the contract stated that, according to the estimate based upon the plans prepared, the entire cost would not exceed $12,000 but this estimate was not made a condition of the agreement. Changes which were made in the plans by the defendant caused an increase in the cost of the building. A clause in the contract provided that the owner reserved the right to make any additions to, or deductions from, the work without impairing the contract, but no work should be considered as extra work unless a written order for the same be signed by the architect, and approved by the owner and given to the contractor. *Held,* that this provision as to extra work applies only in cases where sub-contracts were given to other parties, and has no relation to the contract between plaintiff and defendant, the plaintiff being both the architect and the contractor or agent for the defendant.

*Held,* further, that the plaintiff is entitled to recover ten per cent of the increased cost of the building made necessary by the changes in the plans ordered by the defendant.

In an action to recover for extra work done by the contractor for a building, the prices for similar work fixed by the contract should govern as far as practicable.

An action of *assumpsit* lies to recover for extra work done by the contractor for a building, although the original contract is under seal.

When a contract under seal for the doing of work according to certain plans is abandoned by the adoption of new plans under a parol agreement, *assumpsit* lies to recover for the work done under the new plans.

The allowance of a wholly irrelevant question, the answer to which did no injury to the appellant, does not constitute reversible error.

When a party agrees to draw the plans of a building and supervise its erection, purchase materials and employ labor, to be paid for by the

owner and is to receive as his compensation a percentage of the cost of the building, he is entitled to show in an action to recover such compensation, what the cost of such a building would ordinarily be, such evidence being relevant to the question of his good faith and as to whether the cost of the building under his supervision was reasonable·

Plaintiff in erecting a building as agent for the defendant purchased the materials and employed labor, and was to be paid a commission on the cost. He sent to the defendant from time to time, detailed statements of every item of cost, including items for extra work ordered by the defendant, saying that these items were charged against him and asked to be notified if they were not satisfactory. Defendant paid most of the bills so rendered. In an action to recover a balance, *held*, that the evidence was legally sufficient to show that defendant had approved of the orders of plaintiff for materials and the pay-rolls for labor, and that the amount claimed by the plaintiff was due.

A contract is unlawful when its object is to aid in the perpetration of a fraud upon an individual or upon the public.

An agreement by which a man writes a letter recommending the work of a builder, knowing that it will be used as an inducement to the public to deal with him, when the writer of the letter believes the statements it contains to be false, in consideration of a promise of the builder to waive a demand, is a contract against public policy and void.

Such a letter is therefore no defense to an action by the builder to recover the sum alleged to have been released as a consideration for it.

*Decided June 24th, 1908.*

Appeal from the Baltimore City Court (PHELPS, J.)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE and WORTHINGTON, JJ.

*Benjamin H. McKindless* (with whom was *Wm. Colton* on the brief), for the appellant.

*William J. Ogden*, for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is an action of *assumpsit* by the appellee against the appellant for a balance alleged to be due for labor done and materials furnished under an agreement to build a warehouse. The parties entered into a written contract, under seal, which recites that the party of the first part (appellant) contemplated

erecting a factory building upon land owned by him, that the parties of the second part (appellee), described as constructing architects and engineers, had prepared plans and specifications for the erection of the building, "and have prepared estimates of the cost thereof, and by such estimates the entire cost of said building, including plans, specifications, supervision and commission, will not exceed twelve thousand dollars."

It was agreed that the appellee would furnish the plans, specifications and details for construction, superintend the erection and "purchase on behalf of and as the agents of the party of the first part all the necessary materials, and likewise employ all necessary labor and incur all other necessary cost for the proper construction of the said building according to the said plans and specifications." The appellee also agreed to furnish the appellant a weekly statement of all materials purchased, of all labor employed, and every other reasonable statement required by him. The appellee agreed to render faithful service to the appellant, to purchase the materials and employ the labor at the lowest possible cost and not take for itself any discounts on materials furnished, or labor supplied, but to give the appellant the benefit thereof and of any wholesale prices the appellee might obtain.

After providing for a liability policy, to be procured by the appellant, but to be included in the total estimate for the construction of the building, these provisions follow:

"The party of the first part on Saturday of each week will furnish the necessary money to carry on such work and pay for material and for the weekly payment of labor and all other actual expense as the same shall be required by the party of the second part.

The party of the first part agrees to pay to the party of the second part for all services in connection with the said building, so rendered or to be rendered by the party of the second part, including the furnishing of plans, drawings, elevations and specifications, an amount equal to ten per cent of the total cost of the building.

The plans and specifications referred to in this contract are the same plans and specifications which have been submitted to the party of the first part by the said second party and are

referred to in this contract with the same force and effect as though they were annexed hereto."

It will thus be seen that the appellee was to act as agent of the appellant in purchasing materials, employing the necessary labor and incurring all costs, and that the appellant was to pay it for all its work, including plans, specifications, supervision, etc., "an amount equal to ten per. cent of *the total cost* of the building." Although there is a recital in the contract that by the estimates the entire cost would not exceed $12,000, there is no covenant or agreement that it should be so limited, and the plaintiff's testimony tends to show that the increased cost was the result of changes made by the appellant—having rented the building for a chocolate manufactory, instead of for a laundry and other purposes originally intended. Mr. McLaughlin, secretary and treasurer of the appellee, testified that the changes entailed an additional cost of $5,430.90 including a foundation, which it was thought would not be necessary. The account filed with the declaration states the total cost of the building, including the ten per cent, to be $17,687.25 and allows credits paid by the appellants amounting to $17,021.85, leaving a balance claimed to be due of $665.40.

One of the questions which entered largely into the trial of the case was whether the plaintiff could under the contract recover commissions on the cost above the $12,000. We have already intimated that there is nothing more than an estimate of the cost in the contract, but, of course, the appellee, as agent of the appellant, was required to act in good faith and render faithful service to him. If the jury believed the testimony of the plaintiff, as to the cost of the changes which were made at the instance of the defendant, there was little or no room to question the good faith of the appellee on that ground, and, unless the contention of the appellant is correct, that the changes were not authorized by reason of a provision in the specifications, made part of the contract, there is nothing to prevent a recovery of the "ten per cent of the *total cost* of the building."

The provision referred to is: "The owner reserves the

right, through the architect, at any time during the progress of the work, to make any additions to or deductions from the work without impairing the contract, but no work shall be considered as 'extra work' unless a written order directing the same to be executed is issued, signed by the architect, and approved by the owner, and given to the contractor." Although the Court below seems, by granting the appellant's eighth prayer, to have adopted his theory as to that provision it seems to us to be clear that it is not applicable to what was to be done by the appellee. James McLaughlin testified, without objection, that "the first nine pages and the first three lines of the tenth page of the typewritten copy of the specifications were intended to apply to such contracts for special portions of the work that they might find it desirable to have done by contract rather than to do the work themselves as the agents of the defendants. That such contracts were let during the progress of the work, as for instance, the painting, plumbing, roofing and stone work. That only that portion of the specification below a dotted line on page ten, and the succeeding pages of the specifications were intended to apply to the work of the plaintiff in the contract of March 30th."

The provision with reference to "extra work" is above the dotted line, and it would seem to be clear that it was not intended to apply to the arrangement between the appellant and the appellee excepting where contracts were let to others. The contract itself in terms speaks of the relation between them as that of principal and agent, and not that of contractor and contractee. The appellee was the architect and it would have been remarkable to require it to give a written order "directing the same (extra work) to be executed" by itself as "contractor." There are many provisions in the specifications before this clause which conclusively show that the appellee was not understood to be the "contractor." For example, the contractor is required to remove materials, etc., condemned by the architect, and substitute for them satisfactory materials, etc., and if the removal was not begun in twenty-four hours after notice, the architect was empowered to remove them at

the expense of the contractor, and all costs were to be deducted from moneys due or to become due on the contract. As the appellee was the architect it surely was not the contractor within the meaning of that provision, as it would have been absurd to provide for its condemning its own materials, replacing them with others and deducting the cost. These and other provisions would be in direct conflict with the terms of the written contract, and we must assume that the uncontradicted statement of Mr. McLaughlin gave the correct version of the intention of the parties.

Before considering the exceptions, it would be well to observe that the fact that the original agreement was under seal does not prevent the suit in *assumpsit*, for the balance due from being maintained. Under our construction of the agreement there was no provision for *extra work*, except as applicable to other contractors, and hence there could be no recovery for it under that agreement, but it must be recovered, if at all, in *assumpsit*. I *Poe*, sec. 150. The evidence on behalf of the plaintiff was that new plans were made out and the work was done according to them. There was unquestionably evidence tending to show that the extra work was done at the instance of the defendant, and that it was accepted by him.

But even if it be conceded that the original agreement was not waived and a new one substituted for it, the recovery sought in this case is for the balance of the excess over the $12,000 contemplated by that agreement. The defendant testified that he had paid the "commission up to $12,000; and a fraction over, but not much," and, as he had paid all except the balance of $665.40, it is manifest that the plaintiff was seeking to recover for a part of the "extra work," which we have said could not be recovered by an action of covenant on the agreement under seal because it is not therein provided for. It is proper, however, that the commission fixed by the agreement control the parties. As is said in I *Poe*, sec. 103, in reference to recovery for extra work not specified in the contract, "if the original contract has not been lost sight of in the work as actually done, it will be applied as far as it can be traced; and

the contract prices shall govern, even as to the extra work, wherever practicable. Nor will the jury be warranted in departing from the contract prices, except in cases where the cost of the work or materials has been enhanced by the fault of the defendant." ·

An action of *assumpsit* might also be sustained on the ground that the plans referred to in the agreement were abandoned and new ones substituted by parol agreement, under such cases as *Watchman* v. *Crook*, 5 G. & J. 239; *Insurance·Co.* v. *Hamill*, 5 Md. 170; *Orem* v. *Keelty*, 85 Md. 344.

Having said this much in reference to the contract and specifications, and of the form of action, some of the questions raised will be simplified, and we will now consider the exceptions in the order they are found in the record.

1. The first was to the following question: "You have answered a question that I did not ask you, but I will now ask you what is the usual commission charged by builders where they supply plans and specifications and supervision on a percentage on the cost of the work." It is difficult to see the relevancy of that question, unless it was perhaps intended to reflect upon the good faith of the appellee. The answer was "From 10 per cent to 15 per cent." But as the prayer granted on behalf of the appellee expressly limited the amount to ten per cent, and that is the sum fixed by the contract, and the verdict was only for that amount and interest, the appellant was not injured and hence there was no reversible error in allowing the question.

2. At the conclusion of the plaintiff's case, the defendant made a motion "to exclude from the consideration of the jury the testimony of the witness, McLaughlin, and the testimony of the witness Dowd fixing the cost of the erection of the plaintiff's warehouse upon the basis of the measurement thereof as testified by said witnesses." The testimony intended to be excluded by the motion had been admitted subject to exception. The witnesses had undertaken to show what would be the usual way in which a contractor would estimate the cost of a building where the plans and specifications had

been submitted to him. They replied that it was by ascertaining the cubic feet of the building, and then figuring so much per cubic foot. As the contract had provided for the compensation of the appellee, it was not necessary, or proper, to show what the building would cost by the usual methods, unless it be for the purpose of reflecting upon the good faith of the appellee. As it was the agent of the appellant, and the latter's theory was that the former had subjected him to an expense of over thirty per cent more than the building was to cost, the appellee was called upon to explain what caused it and to show that it did render faithful service to the appellant. The appellee did not claim that it was entitled to recover more than the contract allowed it, but on the contrary Mr. McLaughlin said that "the price Mr. Harrison gave was a fair price"—referring to the actual cost, as claimed by his company, but as reflecting upon the question whether the cost was reasonable, he and the witness Dowd were permitted to show what the ordinary cost would have been. Under the circumstances we do not see how the appellant was injured by the refusal of the Court to strike out the testimony.

3. The plaintiff offered five prayers which were granted and the defendant offered twenty-three—all of which were rejected except his second, eighth, fifteenth and sixteenth. A motion was also granted to exclude certain testimony of the defendant and his witness Weisner, and the Court overruled special exceptions of the defendant to the plaintiff's first, second and fifth prayers. We do not feel called upon to discuss all of these prayers separately, and can perceive no valid reason for having so many in a case of this character.

The plaintiff's first prayer was properly granted. There was a special exception to it "because there is no evidence in this case legally sufficient to support the theory of said prayer, that the defendant had approved the orders of the plaintiff for materials and the pay-rolls for labor and accepted the building." Mr. McLaughlin testified that the building was accepted by the defendant, that during the entire progress of the work weekly statements were rendered to him showing the

amount of the pay-rolls, cost of materials, and for work sub-contracted, to which was always added the ten per cent for commission, for which the defendant gave his checks covering the amounts; that on August 10th there was an unpaid bal-ance of $247.90 and after that there was always an unpaid balance, so that on September 30th there remained unpaid a total of $2,765.40. He said that afterwards, to wit, on September 30th, October 31st, December 16th and December 19th the appellant made payments amounting to $2,100 leav-ing a balance due of $665.40; that "at no time did the defendant ever complain to the plaintiff or find fault or make objections to the character of the work, or the expense, but on the other hand explained his shortage by tight money, and promised to pay shortly." He also testified that while he did not go over with the defendant any special estimate for additional costs, arising from the change of the plans, he did send him detailed statements of every item of cost including the items for such additional work, which statements were on a printed form, on the top of which was: "This is a copy of an order sent to you today charged to you as shown; If this is not satisfactory, kindly notify us at once." "That no work or expenditures ordered by the plaintiff, whether performed by the plaintiff directly or contracted for by a contractor under a bid for such work, was done until it had first been submitted to the defendant on the form containing the words" above quoted. Therefore there was ample evidence to be submitted to the jury.

The special exception to the second prayer on the ground that there was no evidence legally sufficient to prove any certain amount due and owing by the defendant, for labor and materials furnished the defendant by the plaintiff, was also correctly overruled. The plaintiff testified, as we have seen above, that he furnished the defendant with statements of what was due, and after the payments made on and after September 30th there was still due $665.40, including the commission, and the figures given in the testimony enabled the two to be easily separated, if desired, although that was not

necessary. The plaintiff's first, second, third and fourth prayers were properly granted.

. The fifth prayer and plaintiff's motion to strike out the evi-. dence admitted subject to exceptions, in reference to a testimonial letter given October 24th, 1904, will be considered together. In that letter the appellant said: "In reply to yours; of the 22nd inst. would say that my dealings with your company have been very pleasant indeed. Previous to meeting your representative I had plans and estimates from four or five contractors for a three-story building to be erected on my lots 15 and 17 S. Frederick street, on which your firm built me a four story bldg., costing somewhat less than the estimates I had from others on the three story bldg." This prayer instructed the jury that if they found that the defendant admitted that this letter "was untrue in fact and known to him to be untrue, and that in giving it he violated his conscience, then such an admission amounts to a total failure of consideration and cannot be considered by the jury as a set off or recoupment against the plaintiff's claim." The motion was "to exclude from the consideration of the jury, and to strike out as inadmissible, that portion of the testimony of the defendant and his witness, Weisner, which was offered to show the sale of a written testimonial by the defendant to the plaintiff as a set off to the plaintiff's claim." The prayer was excepted to on the ground that there was no legally sufficient evidence to support the statement in it, but the defendant's testimony on the subject is as follows: "Q. What did you mean when you said to Mr. Weisner when he asked for the testimonial, that you could not do it conscientiously? A. I felt they were not entitled to it, and I could not give the letter with a clear conscience, unless they were entitled to it. Q. Did you give it to them? A. I did after thinking it over. Q. You wilfully violated your conscience? A. Yes, we often do that; you often do this, you change your mind, when you are going to whip a child sometimes, you change your mind and don't." He also said in chief that he told Wiesner "I cannot conscientiously give those people, or your people, a letter of

endorsement," and again, "I thought I had better overlook this matter, as they were willing, and bury it, and I thought I had better give them a little letter and boost them along." The defendant had testified that he wrote the letter in consideration of the plaintiff agreeing not to charge the commission in excess of $12,000. The special exception was properly overruled, as there was ample evidence to sustain it. The remaining question is whether the prayer should have been granted and the testimony excluded.

The plaintiff was a new company in Baltimore seeking to get work, and there can be no doubt that the letter was calculated to deceive the public, if the appellant's opinion of the appellee was correct. If he owed this $665.40, as the jury has found he did, he was according to his statement, to be paid that sum for furnishing an untrue testimonial, and we are met with the question whether the law will sustain an alleged contract, which is based on such a consideration—a false statement calculated to impose on the public. Mr. McLaughlin denied that the letter was given for that consideration and it is at least doubtful whether he had authority to discharge a debt due the company in order to procure such a letter. The prayer is peculiarly drawn, but we understand the object of the appellant, in introducing the evidence, was to escape payment of the balance due by showing that he had already paid it by the testimonial letter—although he admits that he believed what he wrote in the letter was untrue. To permit that to be done would be introducing a somewhat novel, but exceedingly dangerous, method of payment into business transactions. As we have indicated, the only use the letter could be to the appellee was the inducement to others to employ it, and if the letter was false, and known to the appellant to be so, it would necessarily have a tendency to impose on the public. The burden was on the appellant to prove payment, after the appellee had made out a *prima facie* case, and to permit him to use the letter for such purpose would be giving him the affirmative aid of the law in enforcing a contract based upon an alleged consideration which had as its basis nothing but an attempted

fraud upon the public—dealing with it from the standpoint of the appellant. It is well settled that an agreement to perpetrate a fraud upon a third person is illegal and void, and an "agreement which is intended or directly tends to defraud the public generally, even though it may not amount to a criminal conspiracy, is illegal and void." 9 *Cyc.*, 469 See also 15 *Am. & Eng. Ency. of Law*, 944. Such an agreement is in violation of the rules of the common law. So without regard to the particular form of the prayer, or of the motion, as the result was to exclude from the consideration of the jury evidence which the appellant's own testimony had made illegal, and such as the law condemns, the action of the lower Court will be sustained.

The defendant's second prayer, which was granted, gave him the benefit of all he was entitled to on that subject, and therefore the rejection of the first was not reversible error. From what we have already said the third, fourth, fifth, sixth, seventh, ninth, tenth, eleventh, thirteenth, fourteenth, seventeenth, eighteenth, nineteenth and twenty-first were properly rejected, and need not be further discussed. The one marked 11¼ and the 12th, which refer to the letter of October 24th, were also properly rejected for reasons stated above. The one called 11½ was properly rejected, without giving other reasons, because there was no evidence that the plaintiff agreed, at or about the time the cost of the warehouse had reached $12,000, that he would not charge commission on the amount in excess of that sum. The building was completed early in September, and the appellant swore that when he wrote the letter of October 24th the appellee agreed to abate the commission, and, as we have seen, the agreement to abate was according to the appellant in consideration of that letter being given. The 20th was properly rejected. In the first place, in the absence of some evidence to the contrary, the presumption is that the Building Inspector did his duty, but as the case was tried more than three years after the building was completed, and there was no suggestion in the evidence that the changes made were not approved of by the in-

spector, or that the appellant in any way sustained the injury by the changes not being approved, if they were not, we cannot understand upon what possible theory such a prayer could have been granted.

Being of the opinion that there was no reversible error in any of the rulings of the Court, the judgment will be affirmed.

*Judgment affirmed, the appellant to pay the costs, above and below.*