## MAYOR AND CITY COUNCIL OF BALTIMORE *vs.* J. A. KINLEIN & COMPANY.

*Contracts: failure to complete according to specifications; no recovery; acceptance; assumpsit for work and materials; damages. Evidence: weight of—; for jury.*

If work under a contract is not completed in strict compliance with the specifications to which it refers there can be no recovery on the contract. p. 342

But if the materials furnished and the work done by the plaintiff were accepted by the defendant, the plaintiff may recover in assumpsit the value of such materials and work, less any damage the defendant may have sustained by failure of the plaintiff to comply with the terms of the contract. p. 342

·And the sum the defendant may have been required to pay for other materials or work necessary to complete the contract in accordance with its terms may be taken as the measure of damages sustained by reason of the plaintiff's default, when there is no other evidence of such damage. p. 342

The value of the work necessary for the completion of the contract, or the damage that the defendants sustained by reason of the plaintiff's failure or neglect to complete the work is a question for the jury and not for the Court.

The weight of evidence, is a question for the jury. p. 344

*Decided June 12th, 1912.*

Appeal from the Superior Court of Baltimore City (AMBLER, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, URNER and STOCKBRIDGE, JJ.

*Alexander Preston* (with whom was *S. S. Field* on the brief), for the appellant.

*George Washington Williams* and *John H. Richardson,* for the appellee.

THOMAS, J., delivered the opinion of the Court.

This appeal is from a judgment in favor of the plaintiffs in an action of *assumpsit* against the Mayor and City Council of Baltimore, for work done and materials furnished in the erection of a set of concrete steps in Patterson Park, and the only exception in the record relates to the ruling of the lower Court on the prayers.

The evidence shows that the plaintiffs, on the 5th day of April, 1909, entered into a contract under seal with the Board of Park Commissioners "for the grading of slopes and erection of one set of concrete steps in Patterson Park in strict compliance with the terms and specifications of the Board of Park Commissioners, which specifications are hereby attached, and with the plans of the Park Department, both of which are distinctly and expressly understood to be part of this contract as fully as if embodied herein, at and for the following prices, viz: 1. Stripping and replacing sod at five cents per square yard. 2. Excavating and replacing top soil at twenty-five cents per cubic yard. 3. Excavation of sub-soil material at thirty-five cents per cubic yard. 4. Stone or gravel for frost base at one dollar and fifty-five cents per cubic yard. 5. Concrete for steps, including top dressing, at twelve dollars per cubic yard."

The specifications provide for the stripping and replacing of sod, the excavation of top soil and other material, the construction of the frost base and drain holes, the mixing of the cement, sand and stone for the steps, and the mixing of the sand and cement for the top dressing of the steps and carriages, and also contain, among others, the following provisions:

"The Contractor further agrees that he will commence the work herein contracted for within ten days of the award of the contract if the Engineer so directs, and that the work shall be completed within twenty (20) working days after the starting of the work."

"The Contractor shall give his constant personal attention to the work when it is in progress, or he shall place it in charge of a competent and reliable foreman, who will have the author ity to act for the Contractor, and who shall be acceptable to the Engineer. There shall be a set of plans and specifications on the work while it is in progress."

"All materials and workmanship shall be subject at all times to inspection and acceptance or rejection by the Engineer."

According to the testimony of Julius A. Kinlein, one of the plaintiffs, he received notice from the park engineer on the 23rd of April, 1909, and the work on the steps was commenced on the 24th of April and finished on the 28th of May, 1909. The Park Board furnished him an estimate of the work done on the steps, by which it appeared that the amount due him was $338.71. Between the 24th of April and the 28th of May "there were twenty-five good working days, exclusive of Sundays and rainy days." He superintended the work, and the park engineer, Mr. Gross, and an inspector, who had charge of the work for the City, were there every day. The work was completed according to the plans and specifications, and turned over to the Park Board on the 28th of May, 1909, and the steps were used by the public until October following. During the erection of the steps the representative of the engineer was always present, and no complaint was ever made to plaintiffs about the work or the materials. After the mortar for the top dressing had been mixed according to the specifications, and two of the steps, in the language of the witness, had been "topped," the representative of the engineer in charge of the work called up the engineer and told him that he thought the "topping" was very dark, and that witness changed the

color and replaced the top dressing which had already been done without making any extra charge for it. He says further that the engineer accepted the work, and that Mr. Manning, the Superintendent of Parks, told him in Mr. Mengel's office, and in the presence of Mr. Gross, that the money due him on the steps would be held up until two other contracts he had were completed.

On cross-examination the witness stated that he received from Mr. Gross a letter dated June 9th, 1909, stating that the plaintiff had "already overrun the time limit set forth in the specifications on Spring Water line in Druid Hill Park, also on concrete steps in Patterson Park," and that if they did not proceed to have the contract on the steps completed by the 12th of June, he would take action to have the bonding company complete the work, and that after receiving that letter, and after explaining the matter to the bonding company, he made an engagement with Mr. Gross to meet him at the steps; that the engineer did not keep the engagement, but sent, as his representative, Mr. Quickbaum; that he asked Mr. Quickbaum what work he wanted done on the steps, and that he replied that he did not know, that Mr. Gross said they needed general repairs, but that the steps were finished and he could not see anything wrong with them, and that he then told Mr. Quickbaum that if he would tell him what he wanted done he would do it. He also states that he signed the following authority to the Board of Park Commissioners:

"I, Julius A. Kinlein, on behalf and for J. A. Kinlein and Company, hereby authorize the Board of Park Commissioners of Baltimore to complete and finish my contracts with the Board of Park Commissioners under date of April 5th, 1909, for the construction of a concrete steps in Patterson Park, and under date of April 5th, 1909, for the construction of a pipe line and small reservoir in Druid Hill Park in accordance with the terms of my contract and bonds hereinbefore mentioned, by the quickest method possible, either with their own force and men or by contracting with the Filbert Paving and Con-

struction Company, or any other contractor which the Board
of Park Commissioners may elect, and I hereby authorize the
Board of Park Commissioners to award the contract for the
completion of the work without competitive bids, and to apply
such funds as now due me· and in the hands of the Board of
Park Commissioners to paying said contractor for completion
and to use all materials which I may have on the jobs.

J. A. KINLEIN & Co.,

JULIUS A. KINLEIN.    (Seal)"
July 8/09.

In explanation for this authority to the Park Commis-
sioners, he says that in so far as it relates to the contract
for the concrete steps, it had reference to laying the sod;
that after completing the steps he was required by his con-
tract to re-lay the sod on each side; that he replaced the
sod several times to please Mr. Gross, and that when he
finally replaced it the weather was very dry and hot and
some of the sod died, and he could not then purchase other
sod; that that was the only reason he signed the agreement,
and that nothing was said at the time about the steps.

According to the testimony of J. Harry Gross, the Park
Engineer, George A. Schaeffer, who was employed as inspec-
tor of the work on the steps; William S. Manning, "super-
intendent of the Board of Park Commissioners," and Sam-
uel W. Filbert, the steps were not completed within the time
specified by the contract, or in accordance with the specifi-
cations. They were not accepted by the engineer, who made
frequent complaints to the plaintiffs during the progress of
the work, and that plaintiffs were repeatedly told that the
work was not accepted and that the steps would have to be
torn out. In pursuance of the authority signed by the plain-
tiff on the 8th of July, 1909, the Board of Park Commis-
sioners entered into a contract with the Filbert Paving
and Construction Company for the completion of the work
mentioned in the contract with the plaintiffs of April 5th,
1909. The steps erected by the plaintiffs were torn out in

the fall of 1909, and the total costs of the completion, by the Filbert Paving and Construction Company, of plaintiff's contract was $295.26, which was paid by the Mayor and City Council of Baltimore.

At the conclusion of the testimony the plaintiffs offered one prayer, which was granted by the Court below, and the defendant offered ten, all of which were rejected except the tenth.

By plaintiff's prayer the jury were instructed "that if they shall find from the evidence in this case that the plaintiffs and the defendant entered into the contract offered in evidence and dated April 5th, 1909, and that pursuant to said contract the plaintiffs furnished all the materials and did all the work necessary for the construction of one set of concrete steps and all grading and sloping at Patterson Park, and set out in the plans and specifications of the Park Department, then the plaintiffs are entitled to a verdict in this case, even though the work and materials may not have been in strict compliance with the said plans and specifications; provided, however, the said materials as furnished and the work as done were accepted by the defendant if they so find. And in awarding damages they shall award the plaintiff such sum as the jury shall find in a fair value for such work and materials, measured by the contract price, less any damage they shall find the defendant suffered by the default of the plaintiffs; if they should find any default."

And the defendant's tenth prayer contained the following instruction: "That if they (the jury) shall find that the plaintiffs entered into the contract, dated April 5th, 1909, offered in evidence, and did not perform the same in accordance with the terms and provisions thereof, and on July 8th, 1909, the plaintiffs authorized the defendant to employ the Filbert Paving and Construction Company to complete said contract, and for that purpose to apply such funds as were then due the plaintiffs in the hands of the Board of Park Commissioners, and to use all the materials which

the plaintiffs had on the job, and that the defendant there-
after did employ the Filbert Paving and Construction Com-
pany to complete said contract in accordance with the terms
thereof, for which completion the defendant paid the Filbert
Paving and Construction Company the sum of $298.26, then
the jury, in making up the amount of their verdict, shall
deduct said sum of $298.26 from the price stipulated in
said contract of April 5, 1909."

While these prayers may not be in all, respects satisfac-
tory, we think they fairly instructed the jury on the law of
the case.

The work mentioned in the plaintiffs' contract of April 5th,
1909, not having been completed in strict compliance with the
specifications, there could be no recovery on that contract.
But if the materials furnished· and the work done by the
plaintiffs in performance of the contract were accepted by
the defendant, or its authorized agent, the plaintiffs were
entitled to recover in an action of *assumpsit* the value of
such materials and work, less any damage the defendant
may have sustained by reason of the failure of the plaintiffs
to comply with terms of the contract, and such sum as the
defendant was required to pay for other materials or work
*necessary for the completion of the steps, etc., in accordance
with said contract,* was the measure of the damage it sus-
tained by reason of the plaintiffs' default, there being no evi-
dence in the case of any amount of damage defendant sus-
tained in consequence of the failure to complete the work
within the time specified.

Mr. Poe says: "When the plaintiff has in *good faith* per-
formed, but not in the manner prescribed by the contract,
and the defendant has sanctioned or accepetd the work, recov-
ery may be had upon this count (count for work and labor)
for the reasonable value of the work so done and accepted;
defendant in this case being entitled to recoup for the dam-
ages he may have sustained by the plaintiff's deviation from

the contract *not induced by himself,* both as to the manner and time of performance." 1 *Poe* (3rd Ed.), sec. 101.

In the case of *Watchman et al.* v. *Crook et al,* 5 G. & J. 239, the Court said: "If after the work was done, though not pursuant to the contract, the party for whom it was done, accepted it, it would seem right and proper, that he should pay for it, what it was worth. This, we think, justice would require, and it is believed, that the principles of law do not forbid it. To this effect the law is stated to be in *Jewell* v. *Schroeppel,* 4 Cowen's Rep. 564. It is there said that 'if there be a special agreement under seal to do work, and it be done, but not pursuant to agreement, either in point of time or in any other respect, the party who did the work may recover upon the common counts in assumpsit, for the work and labor, if the work be accepted by the party for whom it was done. The workman can not maintain covenant, unless he perform the work strictly within the time.' "

In the case of *Orem* v. *Keelty,* 85 Md. 337, where the plaintiff, who failed to complete, within the time required, a contract for grading and constructing certain streets, brought suit on the common counts in assumpsit for the work done by him and accepted by the defendant, the Court said: "The plaintiff could not have recovered in an action of covenant on the sealed instrument, because he would have been obliged to allege and prove the completion of the work before the first day of September, eighteen hundred and ninety-five. But parties to a contract have a right to change it as they mutually agree to do. And here by their dealing with each other they have made a new contract superseding the sealed instrument; that is to say, the law determines that in justice and right a new contract shall be implied. This new contract provides that the plaintiff shall recover the value of his work, and that the defendant shall be allowed such damages as have been caused by delay. The value of the work, if properly performed, is measured by the contract price. There is, however, no sufficient evidence in the record to show any

amount of damage sustained by the defendants in conse-
quence of the failure to complete the work at the stipulated
time." See also *Abbott* v. *Gatch,* 13 Md. 314; *Walsh* v. *Jen-
vey,* 85 Md. 240; *Filston Farm Co.* v. *Henderson,* 106 Md.
335, and *Harrison* v. *McLaughlin,* 108 Md. 427; 9 *Cyc.* 686,
687.

The defendants' first, second, third and fourth prayers
sought to withdraw the case from the jury on the grounds
that there. was no evidence in the case legally sufficient to
entitle the plaintiffs to recover, or to show that the work
was completed in accordance with the contract, or accepted
by the engineer or the defendant, and are disposed of by
what has been said in reference to the evidence and granted
prayers. The witness, Kinlein, one of the plaintiffs, testi-
fied that Mr. Gross, Mr. Manning and Mr. Mengel accepted
the work, and there was also other evidence in the case tend-
ing to show that the work was accepted. The weight of this
evidence was for the jury.

By the defendant's fifth and eighth prayers the Court was
asked to instruct the jury that if they found for the plaintiffs
their verdict should not exceed the sum of $43.45, the differ-
ence between the amount of plaintiffs' claim and the amount
paid by the defendant to the Filbert Paving and Construc-
tion Company. These prayers required the Court to deter-
mine the value of the work *necessary* for the completion of
the contract, in other words, to ascertain the damages the
defendant sustained by reason of the plaintiffs' failure to
complete the work in accordance with the terms of the con-
tract, which was a matter for the jury to determine.

Defendant's sixth prayer was as follows: "The defendant
prays the Court to instruct the jury, that by the true con-
struction of the contract of April 5th, 1909, offered in evi-
dence, all materials and workmanship supplied by the plain-
tiffs in and about the performance of said contract, was sub-
ject at all times to inspection and acceptance or rejection by
the engineer of the Park Board, and unless the jury shall

find from the evidence that the materials and workmanship furnished by the plaintiffs were accepted by the engineer of the Park Board, then the plaintiffs are not entitled to recover in this action, and their verdict must be for the defendant." This prayer was based on the contract of April 5th, 1909, and was calculated to mislead the jury. The suit was upon the common counts in assumpsit, and, as has been said, the plaintiffs were entitled to recover if the defendant, or its authorized agent, accepted the work done by them, notwithstanding it was not done in strict compliance with the terms of the contract, and there is some evidence in the case tending to show that the work was accepted by the "superintendent for the Board of Park Commissioners," and by Mr. Mengel.

The defendant's seventh and ninth prayers are covered by the instruction given in defendant's tenth prayer.

The appellant contends that the plaintiffs are estopped by the authority or agreement in writing, signed on their behalf on July 8th, 1909, from asserting that the steps were erected by them according to the contract, or that they are entitled "to recover any greater amount than the difference between the contract price and amount required to repair and complete the defective construction." But even if we agree with this contention, the plaintiffs would still be entitled to recover for the work done by them and accepted by the defendant, and it was for the jury to determine what amount was required to pay for the work necessary to complete the contract according to its terms and specifications.

According to the evidence produced by the plaintiffs the contract was complied with in all respects, except as to the time within which the steps, etc., were to be completed, and the relaying of the sod, while the evidence of the defendant is to the effect that the steps had to be torn out and re-erected in order to complete the work in accordance with the specifications.

What we have said in reference to the defendant's first, second, third and fourth prayers disposes of defendant's special exception to the plaintiffs' prayer on the ground that there was no evidence legally sufficient to prove that the work done by the plaintiffs was accepted by the defendant, and the special exception to the plaintiff's prayer because it submitted to the jury a question of law, was not pressed by counsel in this Court, and the prayer is not under the circumstances of this case, open to objection on that ground.

Finding no reversible error in the ruling of the Court below, the judgment will be affirmed.

*Judgment affirmed, with costs.*