# JOHN COWAN, Incorporated,

## *vs.*

# WILLIAM MEYER.

*Contracts: construction; bad bargains. Liquidated damages:
impossibility; difficulties not guarded against;
city ordinances.*

Where the parties to a contract, at or before the time of the execution of the same, agree upon and name a sum therein to be paid as liquidated damages in lieu of anticipated damages which are in their nature uncertain and incapable of exact ascertainment, the amount so named will be regarded as liquidated damages and not as a penalty, unless such amount be grossly excessive and out of all proportion to the damages that might reasonably have been expected to result from such breach of the contract.                                                    p. 463

Whether the amount is excessive or whether the damages are incapable of exact ascertainment, is to be determined from the subject-matter, considered in the light of all the surrounding circumstances connected therewith and known to the parties at the time of the execution of the contract.               p. 463

A building and contracting company contracted to build a large terminal warehouse for a subsidiary company of the

Western Maryland Railway. In the contract there was provided that there should be paid by the contractor, as liquidated damages, the sum of $95.00 for every day's delay beyond the time limited for the completion of the work; a sub-contractor, knowing all the terms of the original contract, contracted with the building company for the digging of the foundations; there was in his contract the same provision for the payment of the same sum *per diem* as liquidated damages, for failure of the sub-contractor to complete the work within the specified time: *Held,* that in view of all the facts, the sum named was not excessive, and that the sum named should be treated as "liquidated damages" for the breach. pp. 464-465

The effect of such a contract is to substitute the amount agreed upon as liquidated damages for the *actual* damages resulting from the breach; and the party who fails to perform such a contract will not be heard to say that the other party has not suffered any damages from the breach, or that his loss was less. p. 465

In such a case the party committing the breach can not allege unforeseen difficulties as an excuse for his breach. p. 466

The rights of parties to a contract must be determined by the terms of the agreement they have voluntarily made. Courts can not make a different contract for them, or relieve them of the consequences of a bad bargain. pp. 466-467

A party who, by his contract, charges himself with an obligation possible to be performed, must make it good, unless his performance is rendered impossible by the act of God, the law, or the other party. Difficulties, even if unforeseen, and however great, will not excuse him. p. 467

The fact that city ordinances limited the time during which explosives for blasting could be used was held not to excuse his breach of contract. p. 467

*Decided April 7th, 1915.*

Appeal from the Court of Common Pleas of Baltimore City. (Dobler, J.)

The facts are stated in the opinion of the Court.

The following are the prayers of the plaintiff and defendant, with the action of the trial Court upon the same:

*Pltff.'s 1st Prayer*—At the plaintiff's request the Court instructs the jury that if they find from the evidence that the plaintiff and defendant entered into a written contract, offered in evidence, dated August 19th, 1912, and that the plaintiff did the work therein mentioned, and did everything on his part to be performed in accordance with the terms of said contract except that the excavation and hauling were not completed within twenty working days or forty working days from August 19th, 1912, and that the plaintiff worked on said excavating and hauling after the expiration of forty working days, with the acquiescence and consent of the defendant, and that the defendant accepted and took possession of said work when completed, without making any objection thereto, except as to the time of completion, and if they find that the same was beneficial to the defendant, then their verdict must be for the plaintiff, and they must award him the reasonable value of the work done, at the contract price, which is *prima facie* evidence of such reasonable value, less such sums as they may find have been paid thereon and damages at the rate of $95.00 per day by reason of any delay in the completion of the work or any part thereof not caused by the acts of the defendant or its agents; and the jury in their discretion, may award the plaintiff interest on the unpaid balance from the date on which they find that the excavating and hauling were completed. (*Granted as modified by the Court.*)

*Pltff.'s 2nd Prayer*—The plaintiff prays the Court to instruct the jury that if they find from the evidence that the plaintiff did not complete the work under the contract between himself and the defendant, which was read in evidence, within the time therein named for the completion of said work, and should further find that the defendant took

possession of, occupied and built upon the work and the portions thereof as the same were completed by the plaintiff, and thereby made up and recovered all, or any part, of the delay of the plaintiff; and if they further find that the defendant was delayed by the default of other sub-contractors, should they find that other sub-contractors did work on said building, then the jury are instructed that the plaintiff can not be charged with the delay which was made up and recovered by the defendant, and the verdict must be for the plaintiff for the balance due under said contract, less only the damage sustained by the defendant by reason of the failure of the plaintiff to complete the work within forty working days from August 19th, 1912. (*Granted.*)

*Pltff.'s 3rd Prayer*—At the request of the plaintiff, the Court instructs the jury that if they find from the evidence that under the plans and specifications referred to in the written contract offered in evidence and made part thereof concrete piles were to be driven to obtain a better foundation for the building to be erected by the defendant company, and should further find that said plans and specifications were submitted to and examined by the plaintiff, and that the plaintiff was told by the agents and servants of the defendant that the digging was soft digging, and piles were to be driven, and if the jury further find that a test-hole had been sunk on the ground where the building was to be erected to ascertain the character of soil, and that all of these facts were known by the plaintiff, and should further find that by reason of these facts the plaintiff was misled by the defendant, and entered into said contract without any knowledge of the existence of rock stratum which was subsequently discovered in the cellar and foundation of said proposed building, if the jury find that rock stratum was found in said cellar and foundation; and if the jury further find that by reason of discovery of said rock, the plaintiff was delayed in excavating and hauling the material which he was required to remove within the time mentioned in the written

contract offered in evidence, nevertheless the plaintiff is entitled to recover the reasonable value of the work done, at the contract price, which is *prima facie* evidence of such reasonable value, less said sums as they may find have been paid thereon, without regard to any delay occasioned by the discovery and removal of rock. (*Refused.*)

*Pltff.'s 4th Prayer*—At the request of the plaintiff the Court instructs the jury that if they find that the defendant company entered upon the premises and took possession of, and built upon the portions of the first half of the cellar of the building to be erected, as soon as the work or portions thereof were completed, and without waiting for the expiration of the time limited in the contract for the completion thereof, then the defendant company thereby waived any damage by reason of the failure of the plaintiff to complete the excavation and hauling within the time mentioned in the contract, and the verdict of the jury should be for the plaintiff, for the reasonable value of the work done, at the contract price, which is *prima facie* evidence of such reasonable value, less such sums as they may find have been paid thereon. (*Refused.*)

*Pltff.'s 5th Prayer*—At the request of the plaintiff, the Court instructs the jury that under the true interpretation of the contract between the plaintiff and the defendant, dated August 19th, 1912, and offered in evidence, the blasting and removal of rock is not contemplated or comprehended therein, and if the jury find that the plaintiff did blast and remove rock from the cellar and foundation of the warehouse at Hillen and High streets, and the completion of the work to be done by him under the contract was thereby delayed, the jury is instructed that delay, if any the jury shall find, occasioned by the limited hours said blasting was done by direction of the city authorities, can not be charged against the plaintiff in doing the work required under the contract of August 19th, 1912. (*Granted as modified by the Court.*)

*Deft.'s Prayer*—The defendant prays the Court to instruct the jury that if from the evidence they shall find that the plaintiff proposed in writing to the defendant to do certain excavating work at High and Hillen streets in Baltimore City, the first section of said work to be finished in twenty (20) working days, and the whole in forty (40) working days, and if the jury shall further find that the defendant accepted the plaintiff's proposal, then if the jury shall further find that the plaintiff did not complete the excavating work as mentioned in the plaintiff's proposal and accepted by the defendant, in the time limited in said proposal, then the jury is instructed as matter of law that the defendant is entitled to set off against the plaintiff's claim such sum as the jury may find to be due the defendant by computing the number of days over the time limited by the contract for the completion of the work and the time actually required and allow the defendant the sum of ninety-five dollars ($95), the amount of liquidated damages provided in the contract, for each day's default and render their verdict for the plaintiff or defendant as the case may be, as one. claim exceeds the other. (*Granted.*)

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE. and CONSTABLE, JJ.

*James Piper* and *J. Bannister Hall, Jr.,* (with a brief by *Carey, Piper & Hall*), for the appellant.

*Robert F. Stanton,* for the appellee.

THOMAS, J., delivered the opinion of the Court.

This suit is on the common counts, and a special count which alleges "that on or about the 19th day of August, 1912, the plaintiff contracted with the defendant to perform

all the work in excavating at the Baltimore Fidelity Warehouse, corner of Hillen and High streets, in the City of Baltimore, according to drawings and specifications prepared by Emory & Nussear, Architects, including all trenches and footing foundations, at and for the price for excavating and hauling of $1.35 per yard. Said work to be done within forty working days from the date of said contract," and that "The plaintiff has performed all of said work, and done all of the hauling provided for in said contract in accordance with the terms of said contract, and has fulfilled and done all things required to be done by him thereunder, together with extra work ordered by the defendant, but the defendant has not paid in full amount of $9,981.45, which it agreed to pay, and there remains overdue and unpaid the sum of $2,181.45." There was filed with the declaration an account in which the defendant is charged with the cost of digging 7,350 cubic yards of dirt at $1.35, amounting to $9,922.50, and a number of small items bringing the total charges to $9,981.45, against which there is a credit of "By cash, $7,-800.00," leaving a balance of $2,181.45.

The defendant pleaded that it "never promised" and that "it was never indebted as alleged," and, for a third plea, that the plaintiff was indebted to the defendant in an amount greater than the plaintiff's claim, etc. The seventh count of the plea of set-off charges "that on or about the 19th of August, 1912, the plaintiff contracted with the defendant to do certain excavating at the corner of Hillen and High streets, in the City of Baltimore, in accordance with certain plans and specifications, and all hauling at and for the sum of $1.35 per cubic yard; part of said work to be done in the manner following: 'Beginning at the north end of the building and working toward the front to a distance of one hundred and twenty-five feet (125') to a depth required, including all trenches and footing foundations, same to be completed in twenty working days from the said 19th day of August, 1912.' And the said plaintiff further agreed to com-

plete the whole work in forty working days. And the said plaintiff further agreed with this defendant to pay to it the sum of ninety-five dollars ($95.00) per day as liquidated damages for each and every day thereafter exceeding either the twenty days or forty days time limit," and "that the plaintiff did not complete that portion of the work which under the terms of the said agreement was to have been completed in twenty working days, but on the contrary exceeded the time limit by twenty-nine working days. And the defendant claims $2,755.00, which amount the defendant is willing to set off against the plaintiff's claim, and prays judgment for the excess."

The plaintiff joined issue on the first and second pleas and replied to the third plea that he never promised, etc., as alleged.

It appears from the evidence that a number of contractors, including the defendant, bid for the work of erecting, for the Baltimore Fidelity Warehouse Company, a large warehouse on the corner of Hillen and High streets according to drawings (blue prints) and specifications prepared by Emory & Nussear, architects, and that the plaintiff, a sub-contractor, submitted to the contractors bids for the work of excavating for the building in accordance with those drawings and specifications. The contract was awarded by the Warehouse Company to the defendant on the 17th of August, 1912. The building was to be two hundred and fifty feet long, and the contract between the defendant and the Warehouse Company provided that it should be completed within six months from the 17th day of August, and that the defendant should pay to the Warehouse Company a fixed sum per day for each and every day the completion of the building was delayed beyond that time, as liquidated damages, etc. It does not appear from the record what sum per day the defendant agreed to pay, but it is stated in the briefs of counsel for the appellant and appellee that the amount was $95.00. The record contains the following extracts from the specifications, which

are said to be the only provisions relating to the necessary excavations:

"*Excavation*—Excavate for all foundation walls, piers, cappings to piles, etc., as may be shown or required. The earth taken from such excavations shall be used for leveling and filling in up to basement floor slab, and shall be filled in and well wetted and rammed in place around all walls, piers, etc., as the work progresses. Where necessary this contractor shall furnish and ram in place additional fill of good and substantial quality, and shall remove from the premises all superfluous earth, rubbish, debris, etc.

"*Bailing*—Bail and pump out all soil and water that may collect in the excavations from drains, springs, rain, or otherwise, and see that the excavations are well drained before any mason work is done in them.

· "*Note*—Bidders shall visit site before submitting estimate on this work, and shall acquaint themselves with existing conditions. The work of this contract shall be so conducted and executed that it will not interfere in any way with the business of the Owner in and about the premises, and no street shall be blocked or so obstructed as to impede traffic.

"*Piling*—This Contractor shall furnish and properly place in position all piles necessary to properly support the building so that no settlement shall occur, all as shown and called for on drawings and in these specifications. Piles shall be of concrete, etc."

The plaintiff having submitted a bid to the defendant for the work of excavating for the building, the defendant, on the day it entered into the contract with the Warehouse Company, sent for the plaintiff, and the plaintiff and defendant entered into the following contract, in the form of an offer by the former and an acceptance by the latter:

"Baltimore, August 19, 1912.

Mess. John Cowan, Inc.

Gentlemen:—

I hereby propose to do all the excavating at the Bal-

timore Fidelity Warehouse, corner Hillen and High
Sts., according to drawings and specifications prepared
by Emory & Nussear, Architects, as follows:

Beginning at the north end of the building and work-
ing toward the front to a distance of 125 feet and to
the depth required, including all trenches and footing
foundations, same to be completed in twenty working
days from above date. I also further propose to com-
plete the entire excavation necessary for the building
within forty working days from above date.

The price for excavating and hauling away same
to be *One Dollar and Thirty-five Cents* ($1.35) per
yard.

I also further agree that if at any time you should
see fit to put a steam shovel on the works I will haul
the dirt away after being loaded on my wagons by the
steam shovel for the sum of *One Dollar* ($1.00) per
yard and will agree to take from this shovel 300 yards.
per day.

I further agree to pay to you the sum of $95.00 per
day as liquidated damages for each and every day
thereafter exceeding either the twenty or forty day
time limits.

Terms: eighty per cent. of the value of the work
completed each week, balance within thirty days after
completion.

Yours respectfully,
Accepted: (Signed) Wm. Meyer.
(Signed) John Cowan, Inc.,
(Seal) By Wm. B. Norris."

Plaintiff states that he began excavating for the building
on the 19th of August, 1912, and completed the work on
the 25th of the following October. During that time there
were nine Sundays and twelve days on which he could not
work on account of rain, making in all twenty-one days which
were not working days. He says that he "was to complete
the first half of the contract in twenty days, and twenty days

additional for the second half"; and that he completed the
excavations in forty-six days, which, "according to his calcu-
lation, was six days over the forty days' period in the con-
tract"; that he could not tell when he completed the first half
of the work because he "didn't keep any dates at all for the
first half," and does not deny that it was not completed until
the fifteenth of October. Referring to a conversation be-
tween the plaintiff and Mr. Tase, the vice-president of the
defendant, on the day the plaintiff entered into the contract,
and immediately preceding its execution; plaintiff was asked
by his counsel the following question: "What, if anything,
was said by Mr. Tase and you at that time about the char-
acter of the soil or the character of the digging that was to
be done by you?" The question was objected to by the
defendant, but the Court below overruled the objection, which
ruling is the subject of the first exception, and the plaintiff
replied: "Mr. Tase said to me, Meyer, you know that this
job must go on in a hurry, and I said, I am the man that can
do it in a hurry. Now, then, I said, Mr. Tase, how many
yards of dirt have you there? I don't understand blue
prints; tell me how many yards of dirt you have there, and
I will tell you how long it will take me to dig it out. He
said about 6,000 yards, and I said, If you have 6,000 yards
of dirt there I will move it in 40 days, and he said, Couldn't
you give me half of the cellar in twenty days and the balance
in 40 days? and I said, Well, I don't think there would be
any trouble to do that, but we can start from one end and
go out at the other end. I said, I guess the digging will be
very good there, because they have a test-hole over there at
the corner and they are going to drive piles and the digging
is going to be fine, and he said, The digging is going to be
lovely, because a test-hole has been dug and there is going
to be good digging, and I said, If that is the case I can get
the job out in 40 days." Plaintiff further testified that be-
fore making any bids for the work he examined the test-hole,
which had been dug by the Warehouse Company or the Rail-

road Company, and the blue prints and specifications, which provided for piles to be driven, etc., and that the statement of Mr. Tase, the conditions shown by the test-hole and the provision in the specifications in regard to piles led him to believe that the earth would be "soft" and that "the digging would be good"; that after he and his employees had worked about sixteen days, and "had the cellar at grade" and "were digging the footings where the piles were to go" they "struck nothing but a bed of solid rock"; that he had to go to the City Hall to get a permit to "blast out the rock"; that the rule of the Engineer's Department prohibited blasting "where teams are passing," except after six o'clock in the evening and early in the morning; that he "took out" 456 cubic yards of rock and 7,350 cubic yards of dirt, and that the delay in completing the work within the time specified in the contract was due to the rock and the fact that he could not do any blasting except at the hours named; that the defendant did not pay him "for all the dirt he dug and hauled away"; "that there was still due him the sum of $2,181.46, figured out on the basis of $1.35 per cubic yard for the dirt taken out," and that he had demanded the $2,181.45 from the defendant, but that it had declined to pay it on account of the delay in completing the work.

According to the evidence produced by the defendant, nothing was said by Mr. Tase to the plaintiff about the character of "the digging" to be done, and the plaintiff never intimated that the contract did not include blasting and moving rock until he testified in this case. The provisions of the contract between the defendant and the Warehouse Company in respect to the time allowed for the erection of the building and the obligation of the defendant in the event of its failure to comply with that requirement were made known to the plaintiff, and the clause in the contract we are now considering requiring the plaintiff to complete the first half of the excavations within twenty working days was inserted for the purpose of enabling the defendant to com-

mence the erection of the foundation and walls of the north-
ern half of the building while the plaintiff was excavating
for the other half. Mr. Tase states that excluding Sundays
and holidays, and counting only "the days on which the
work could be done," twenty working days from the 19th of
August extended to the afternoon of the 11th of September,
1912; that the first half of the excavations was not completed
until the 15th of October, and that there were "thirty-four
days overtime on the first half of the contract" for which
the defendant was entitled to claim $95.00 per day; that
he "has had a great deal of experience in excavating work
of that character * * * and in his opinion there was no reason
why the excavating" for "the first half of the building could
not have been done in twenty working days;" that the defend-
ant had made up the "time lost" through plaintiff's "delay;"
but that it had cost the defendant a great deal of money to
do it. On cross-examination he further stated that the build-
ing was not completed within six months, and that the Ware-
house Company had deducted about $2,000.00 from the con-
tract price for that reason.

There is no charge made in the account for blasting and
moving the rock referred to, and the items of the account
are not disputed. Nor is there any serious conflict of evi-
dence in regard to the number of days the plaintiff was
engaged in the work beyond the twenty days limit, which,
according to the defendant's evidence was from twenty-six to
thirty-four days. The record contains about eighty pages of
testimony, most of which was offered for the purpose of show-
ing the cause of the delay and that the defendant was not
damaged by reason thereof, and there are thirteen exceptions
to the rulings of the Court in respect thereto, but the brief
reference we have made to the evidence is sufficient to show
that the important questions to be determined are, first,
whether the $95.00 per day mentioned in the agreement is
to be treated as a penalty, or, in the language of the con-
tract, as liquidated damages, and the effect of that provision
upon the rights of the parties, and, second, whether the

plaintiff can, under the circumstances and in this case, rely upon the fact that he encountered rock as an excuse for his failure to complete the first half of the excavations within the time specified.

The rules by which we are to be guided in the solution of the first question with which we are here confronted are clearly stated in the very recent case of *The Baltimore Bridge Company v. United Railways and Electric Company, Ante,* page 208, where the previous decisions of this Court and of other courts are referred to and fully discussed in the opinion prepared by JUDGE PATTISON. It is there said: "From the authorities given above, it may be stated as a settled rule of law, that where the parties, at or before the time of the execution of the contract, agree upon and name a sum therein to be paid as liquidated damages in lieu of anticipated damages which are in their nature uncertain and incapable of exact ascertainment, that the amount so named in the agreement will be regarded as liquidated damages and not as a penalty, unless the amount so agreed upon and inserted in the agreement be grossly excessive and out of all proportion to the damages that might reasonably have been expected to result from such breach of the contract. And whether it is excessive or whether the damages are incapable of exact ascertainment should be determined from the subject-matter of the contract considered in the light of all the surrounding facts and circumstances connected therewith and known to the parties at the time of its execution." It appeared in that case that the Railways Company had entered into a contract with the City in reference to the work referred to in the contract between the Railways Company and the Bridge Company, and JUDGE PATTISON, after referring to the fact that the contract with the City had not been admitted in evidence, said in reference to it: "What covenants, if any, were made by the railway company to the City in the aforesaid contract by which they were to become liable to the City for the loss or damage it might sustain because of the failure to complete the work within the time

named, are not disclosed by the record. If the said contract
contained such covenants, then any anticipated · damages
resulting to the company by reason of a breach thereof,
occasioned by the aforesaid breach of the contract with the
appellant company, could have been properly considered
with the other anticipated damages in determining the amount
of the liquidated damages to be inserted in the agreement."

In the case at bar the defendant had entered into a con-
tract with the Warehouse Company to erect the warehouse
within a definite time, and had agreed to pay to the Ware-
house Company a fixed sum per day (which, according to
briefs of counsel, was $95.00) as liquidated damages for
every day the completion of the building was delayed beyond
that time. The plaintiff was fully advised of these pro-
visions of the contract between the defendant and the Ware-
house Company, and that the time consumed in the work
he was about to undertake was a matter of great importance
to the defendant. The position of the parties was such as
to render it difficult if not impossible to anticipate with any
degree of accuracy the consequences to the defendant of a
failure to do the work within the time the plaintiff agreed to
do it, and the damages which the defendant would sustain
by reason of such failure were, in the language of this
Court in *United Surety Co.* v. *Summers,* 110 Md. 95, "in
their nature uncertain and unascertainable with exactness,"
and might "be dependent upon extrinsic considerations and
circumstances." We cannot say that the amount named is
"grossly excessive and out of all proportion to the damages
that might reasonably have been expected to result from
such a breach of the contract," especially in view of the
statement of counsel that a like sum·had been agreed upon
as the measure of damages for a similar breach of the con-
tract between the defendant and the warehouse Company.
Having regard therefore to the subject-matter of the contract,
the position of the parties and the surrounding facts and
circumstances existing at the time of its execution, there is
no reason why we should not give effect to the terms of the

agreement and treat the sum designated as "liquidated dam-- ages," as the measure of compensation to which the defendant is entitled by reason of the breach.

This construction of the contract eliminates the question of the *actual* damages the defendant sustained by reason of the failure of the plaintiff to complete the first half of the excavations within the time specified. In other words, the effect of the clause we are considering is to substitute the amount agreed upon as liquidated damages for the *actual* damages resulting from the breach, and, as said by Mr. Brantly in his excellent work on *Contracts,* "the party who failed to perform the contract will not be heard to say that the other party has not suffered any damages from the breach, or that his loss did not equal the sum named. The very object of the clause is to prevent such a controversy." *Brantly on Contracts* (2nd Ed.), section 163; *Willson* v. *Baltimore City,* 83 Md. 203; *Baltimore Bridge Company* v. *United Railways, etc., Company, supra.*

Nor can the plaintiff rely upon the fact that he was compelled to blast and move rock in order to accomplish the work he undertook, to relieve him of the consequences of his failure to complete the excavation within the time agreed upon. The contract provided that he was "to do all the excavating at the Baltimore Fidelity Warehouse * * * according to drawings and specifications prepared by Emory & Nussear, Architects, as follows: Beginning at the north end of the building and working toward the front to a distance of 125 feet and to the depth required, including all trenches and footing foundations, same to be completed in twenty working days from" the date of the contract. The time in which the work was to be done was not made dependent upon the kind of material he had to move, and there is no pro- vision in the contract or specifications to the effect that if in the course of the work he had to blast and move rock the time limit should not apply, or to in any way qualify an absolute undertaking to complete the first half of the excavations within the time stated. The specifications cautioned

bidders to "visit the site" and to "acquaint themselves with existing conditions before submitting estimates on" the work, and the plaintiff says he examined the test-hole and the drawings and specifications. If after doing so he was satisfied as to the kind of work required, and was willing to enter into a contract to complete it within a certain time without any provision to protect him from the consequences of a mistake in regard to the character of the material to be moved, he cannot in a suit at law to recover for the work he did under the contract avoid liability for his failure to comply with its terms by showing that the work was harder or more difficult than he had anticipated. The rights of parties to a contract must be determined by the terms of the agreement they have voluntarily made. Courts cannot make a different contract for them, or relieve them of the consequences of a bad bargain. This case is not unlike the case of *Simpson* v. *United States,* 172 U. S. 372, where the Court held, quoting from the syllabus: "That the contract imposed upon the contractors the obligation to construct the dock according to the specifications within a designated time, for an agreed price, upon a site to be selected by the United States, and contained no statement, or agreement or even intimation that any warranty, express or implied, in favor of the contractor was entered into by the United States concerning the character of the underlying soil." In the case of *Taylor* v. *Turley,* 33 Md. 500, JUDGE STEWART, in answer to the contention that subsequent events rendered the consideration for the defendant's promise so inadequate that it would be unjust to hold him bound by the terms of his contract, said: "Whether he made a good or bad bargain, or received a full equivalent for what he promised to pay, cannot affect the legal character of his obligation." In the case of *United States* v. *Gleason,* 175 U. S. 585, the Supreme Court said that one of the well-settled rules of law "is that if a party by his contract charge himself with an obligation possible to be performed, he must make it good, unless his performance is rendered impossible by the act of God, the law, or the

other party. Difficulties, even if unforseen, and however great, will not excuse him. If parties have made no provision for a dispensation, the rule of law gives none—nor, in such circumstances, can equity interpose." And it is said in 6 *Cyc.* 70, "A builder who has improvidently assumed an absolute liability when he might have undertaken a qualified one only, is not excused from performing his engagement unless prevented by the act of God, the law, or his employer; no hardship, no unforseen hindrance, no difficulty short of absolute impossibility will excuse him from doing what he has expressly agreed to' do. Thus, he is not excused from performance because of a latent defect in the soil," etc. The plaintiff admits that the delay in completing the work was not caused by the defendant but claims that it was due in part to an ordinance or rule of the "Engineer's Department" forbidding blasting except during an early hour in the morning or late in the evening, and his counsel contends that the case comes within the exception which relieves a party where performance is rendered impossible by law. The obvious answer to this suggestion is, first, that there is no evidence to show that the ordinance or rule referred to was not in force at the time the contract was made, and it must be presumed that it was made with reference to all lawful rules and regulations affecting the work to be done under it, and, second, that the rule prohibiting blasting except during the hours named did not make performance impossible, but, at most, only rendered it more difficult. It is said in 9 *Cyc.* 631: "The exception does not apply, however, where the impossibility created by the law is only temporary, where the change merely makes performance more burdensome."

As we have said, the items of the plaintiff's account are not disputed, and as he did the work and it was accepted by the defendant, he is entitled to recover for it under the common counts at the contract price. But as the first half of the work was not completed within the time specified in the contract, the defendant was entitled under the pleadings to

set off against the plaintiff's claim of $95.00 per day for every day consumed in the completion of the first half of the excavation beyond the twenty days mentioned, as the measure of defendant's damages for the breach, and to a verdict for any excess over plaintiff's claim the jury might find. 1 *Poe* (3rd Ed.), sec. 101; *Orem* v. *Keelty,* 85 Md. 337; *Baltimore City* v. *Kinlein,* 118 Md. 336; Code of 1912, Art. 75, secs. 12 and 13.

The evidence embraced in the first exception, which we have set out above, was not admissible. The contract is free from ambiguity, and as it does not contain any warranty on the part of the defendant in respect to the amount of "dirt" to be moved or kind of "digging" to be done by the plaintiff, its terms cannot be varied or added to by evidence of what was said by the parties prior to its execution.

The remaining exceptions to the evidence refer to evidence introduced for the purpose of showing that the failure of the plaintiff to complete the excavations within the time allowed did not delay defendant in the erection of the building or result in any damage to the defendant, and for the reasons we have already stated there was error in the rulings of the Court below in admitting it.

At the conclusion of the evidence the Court below granted the plaintiff's first, second and fifth prayers, and the defendant's prayer. The Reporter is requested to set out plaintiff's first prayer in his report of the case. By the plaintiff's second prayer the jury were instructed that if they found that the defendant "made up and recovered all, or any part of the delay of the plaintiff," etc., "then the plaintiff cannot be charged with the delay which was made up and recovered by the defendant," and by his fifth prayer the jury were told that "under the true interpretation of the contract between the plaintiff and defendant * * * the blasting, and removal of rock is not contemplated or comprehended therein," and that if they found that the plaintiff "did blast and remove rock from the cellar and foundation of the warehouse * * *, and the completion of the work to be done by him under the

contract was thereby delayed, then the delay caused by the limited hours said blasting was done by direction of the City authorities, cannot be charged against the plaintiff." These prayers are covered by what we have already said in regard to the construction of the contract, the rights of the parties under it and the plaintiff's reliance upon the fact that he had to blast and move rock, and cannot therefore be approved. The second prayer is open to the further objection that it is in conflict with the plaintiff's first prayer and the defendant's prayer which were granted by the Court.

The plaintiff's first prayer is based upon the theory that the defendant is entitled to an allowance of the $95.00 per day mentioned in the contract as liquidated damages, which is in accordance with the proper construction of the contract, but we think in other respects it was calculated to mislead the jury. By the terms of the contract the plaintiff was allowed twenty working days within which to complete the first half of the excavations and forty days for the completion of the "entire excavations." He could not, of course, escape responsibility for a breach of his agreement in regard to the first half by hastening the completion of the second half, and if he had complied with the contract in reference to the first half, but failed to do so in respect to the remaining half he would have been liable to the extent that he exceeded the forty days limit. But if the delay occurred in the first half of the work and he was charged with the number of days he exceeded the twenty days limit, he could not, under any fair construction of the contract, be charged *with the same time* in allowing the defendant for a breach of the contract in respect to the forty days period. That would result in a *double charge*. In the seventh count of the plea of set-off the defendant only alleges the breach of the agreement to complete the *first half* of the excavations within the twenty days. It could, of course, under a different state of facts, have recovered also on the common counts, the $95.00 per day for a breach of the time limit in respect to the remainder of the work, but notwithstanding the plaintiff

testified that he exceeded the forty days limit for the "entire excavations," the evidence shows that all of the delay occurred in the completion of the first half of the work, and the only claim made by the defendant in the evidence is for *that* delay. The form of the prayer might have led the jury to believe that they should add, to the number of days, the time consumed in the completion of the first half of the work, exceeded the twenty days limit, the six days delay in the completion of the entire excavation beyond the forty days, whereas, in allowing the defendant for the breach of the contract, they should, under the evidence in the case, have been confined to the number of days the completion of the first half of the work was delayed beyond the twenty days period. This error in the prayers could not have prejudiced the defendant, but inasmuch as the case will be remanded for a new trial we deem it advisable to call attention to it, and for a like reason we may add that the same criticism applies to the defendant's prayer, which is not strictly before us on this appeal. Another objection to plaintiff's first prayer is that it instructed the jury that they could allow the plaintiff, interest on the balance found to be due him from the date the excavations and hauling were completed, whereas the contract provides that eighty per cent of the cost of the work should be paid each week and the "balance within thirty days after completion."

For the errors indicated the judgment will be reversed and case remanded for a new trial.

> *Judgment reversed, with costs and a new trial awarded.*