**FOSTER v. HUDSON VALLEY LUMBER CO., Inc.**

Civil No. 830.

District Court, D. Maryland.

March 3, 1941.

382

Semmes, Bowen & Semmes, of Baltimore, Md. (William D. MacMillan and Ambler H. Moss, both of Baltimore, Md.), for plaintiff.

Woodcock, Webb, Bounds & Travers (William W. Travers), of Salisbury, Md., for defendant.

WILLIAM C. COLEMAN, District Judge.

This is a suit on a written contract. It was originally instituted in the Circuit Court for Wicomico County, Maryland, but removed to this court pursuant to provisions of Section 28 of the Judicial Code, 28 U.S.C.A. § 71.

The terms of the contract, and what took place under it leading up to the present controversy, may be summarized as follows. The contract was entered into on January 15, 1938, in Maryland—and therefore is governed by Maryland law—by Mrs. Foster, plaintiff, and the defendant corporation, for the purchase by the latter from the plaintiff of the "merchantable pine timber" of a specified size located on plaintiff's land in Worcester County, Maryland, at a specified price "scaled and measured in accordance with either the Standard Scribner or Doyle Rule using middle measure of the tree, to obtain the fair lumber content of said tree." The buyer agreed to cut and remove all the timber from the land, without expense to the seller, within twenty-four months from the date of the contract. The contract further provided that the timber should be scaled or measured by a scaler or scalers agreed upon by the parties, the wages or salary of such person or persons to be divided equally between the buyer and the seller.

The stipulated terms of payment were cash in full for all timber when loaded for shipment, but it was further provided that upon the execution of the contract the purchaser should deposit $5,000 in a specified bank, to the credit of the seller, on which the seller might draw from time to time in payment of timber taken, unless the buyer paid direct by cash or check. It was further agreed "that as and if and as often as said deposit is diminished by withdrawals as above provided that it [the buyer] will replenish the same by making additional deposits to the credit of the Vendor in said account, so that the net balance in said account shall at all times be Twenty-five Hundred Dollars in excess of timber cut and removed from said lot of ground. At the expiration of this agreement and its fulfillment by the Buyer including the payment in full for all timber cut, whether removed or not by the Buyer, the Vendor

covenants and agrees to withdraw and pay over to the Buyer the balance to the Vendor's credit in said account."

Then came the following provision for liquidated damages: "In the event, however, that the Buyer abandons said timber or fails or defaults in carrying out all of the covenants, promises and obligations assumed by it under his contract, said balance will in that event be treated as the sole property of the Vendor, and may lawfully be applied by her to her own exclusive use as liquidated damages and not as a penalty." Plaintiff has invoked this provision in the present suit, electing to limit proof of damages to same, and has been permitted so to do by a preliminary order entered in this proceeding, on the authority of Baltimore Bridge Co. v. United Railways & Electric Co., 125 Md. 208, 93 A. 420; Cowan, Inc., v. Meyer, 125 Md. 450, 94 A. 18. The jurisdictional requirements being satisfied by the original suit, jurisdiction is not lost by the fact that the amount now sued for under the liquidated damage clause of the contract is less than the jurisdictional requirement. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845.

Shortly after the execution of the contract, the defendant corporation assigned all its rights thereunder to the United Piling Corporation, a Maryland company, which promptly entered upon the logging operations necessary to remove the timber. Cutting was started on or about January 23, 1938. It is not contended, however, that by such assignment the defendant has been relieved of any of its obligations to the plaintiff under the contract, the plaintiff never having accepted or recognized the assignee.

One Ernest Shockley was agreed upon by the parties as the scaler called for by the contract, he being also separately employed by the defendant in connection with the contract and, in fact, had complete charge of defendant's operations thereunder whenever another representative of the defendant, Mr. Apgar, was absent. One Samuel E. Shockley was agent for the plaintiff in connection with the contract. Ernest Shockley measured the timber before being loaded, made a record of his measurements either in duplicate or triplicate, and gave one copy of same to Samuel Shockley and the other copy either to defendant's other representative, Mr. Apgar, or made it available to him.

For a while the so-called Doyle Rule of measurement was employed, but on or about February 27, 1938, Mr. Arthur Foster, representing his mother, the plaintiff in the present suit, requested Mr. Pearce, president of the defendant corporation, to substitute therefor the so-called Scribner Decimal C Rule, a permissible substitution under the express provisions of the contract, Mr. Foster having found that the Doyle Rule was producing results that were unfair to him. Both Mr. Pearce and his representative, Mr. Apgar, were furnished copies of this Scribner Rule by Mr. Foster. The cutting of timber was stopped for a short while pending agreement on this question, and finally, on April 20, 1938, Mr. Pearce wrote Mr. Foster agreeing to the substituted Scribner Decimal C Rule as the standard of measurement for all of the timber under the contract. Thereupon the cutting of timber continued during April, May, June and for part of July, 1938; at that time the defendant's net balance deposited under the contract had fallen slightly below the $2,500 minimum. Mr. Pearce admitted this fact to Mr. Foster and stated that the deposit would be brought up to the required amount, but also, and for the first time, stated that he thought the seller should bear one-third of the entire amount of wages which the defendant, the buyer, was paying to Ernest Shockley, that is to say, one-third of what the latter was earning from the defendant in addition to what he earned as the joint representative of both of the parties in the performance of his duties as scaler.

A prolonged discussion ensued over this point, and the parties never reached an agreement. The defendant sent $300 additional, but this was not sufficient to settle its account for all timber that had been cut and to keep the net balance on deposit from being less than the contract requirement. Following further demands for payment, Mr. Foster notified defendant's representative, Mr. Apgar, not to cut any more timber until the deposit requirement was fulfilled. The latter was never done. Mr. Foster suggested that the matter of the Shockley wage dispute be submitted to arbitration. This was not agreed to, but nevertheless Mr. Foster, rather than allow this dispute to stand in the way of the fulfillment of the contract, stated that he would pay one-third of the entire wages of Shockley, as defendant had proposed, provided the defendant would meet the deposit requirement of the contract, and

would proceed with the cutting of the timber. It is significant that at about the same time, according to a statement sent by defendant's counsel to plaintiff's counsel, a deficiency of over $600 in defendant's required deposit account is indicated, after giving credit for the entire amount claimed as plaintiff's share of the Shockley wages. On February 8, 1939, the present suit was filed.

Obviously, the issues in the case have been greatly simplified, and the testimony greatly curtailed, by reason of the fact that plaintiff has elected to rely upon the liquidated damage clause in the contract. Thus restricted, the two grounds on which plaintiff asserts a breach of the contract by the defendant are: (1) Defendant's failure to pay in cash for the timber as and when it was cut and removed or to make "additional deposits to the credit of the Vendor in said account so that the net balance in said account shall at all times be Twenty-five Hundred Dollars in excess of timber cut and removed from said lot of ground"; and (2) defendant's abandonment of the timber and its refusal to perform the terms of the contract, from the time of said abandonment until January 15, 1940, when the time expired, as stipulated in the contract, within which all timber was to be cut and removed.

On its part, the defendant, while admitting that the net balance of the deposit stipulated in the contract had fallen below the required minimum of $2,500, nevertheless asserts that the plaintiff failed and neglected to inform the defendant of the amount of timber which had been cut, which defendant claims was necessary in order that the defendant might be apprised of the exact state of this account, and whether further deposit was necessary. Defendant also charges that it had not received proper credit for the share of the scaler's wages properly chargeable to the plaintiff, and that because of these facts, its failure to maintain the balance on deposit at the required minimum was not in law a breach of the contract. On the specific question of abandonment, defendant contends that it ceased operations because it had been ordered to do so by the plaintiff, and had not been permitted to proceed further, which conduct it contends was unjustifiable; in other words, that such breach as defendant committed was directly due to plaintiff's unwarranted prior breach of the contract and that, therefore, plaintiff is not entitled to recover under any theory.

We conclude that plaintiff's position is sound, namely, that defendant has committed a material breach of the contract in the two respects referred to; that plaintiff was justified in ordering defendant to desist from further cutting, as and when she did, and that, therefore, plaintiff is entitled to recover.

■ It is well settled by Maryland law that a provision in a contract such as the one here under consideration, whereby the buyer agrees to secure the payment of the purchase price by keeping on deposit to the credit of the seller a certain sum, is of the very essence of the contract, and that, therefore, a breach of such provision entitles the seller to recover, unless compliance with such a provision is dependent upon some act by the seller which he has failed to perform. Webster v. P. W. Moore & Son, 108 Md. 572, 595, 71 A. 466. We find in the present case no such duty unperformed on the part of the plaintiff.

Defendant asserts that its failure to meet the deposit requirement was caused by plaintiff's failure to give proper and timely information, with respect to the state of the account between the parties. However, this position is not tenable because even if it be assumed—an assumption which we think is contrary to the weight of the credible evidence—that plaintiff did not keep defendant so advised, there was no obligation so to do, either expressed or implied in the contract. If, by reason of the method of operating and checking the dimensions of the timber as cut, the figures with respect to same had come solely into the possession of the plaintiff or her representatives, and the latter had failed to divulge such information to the defendant or its representatives; or if, apart from any provision in the contract, the parties had acquiesced in a practice whereby it was impliedly understood that defendant would rely upon submission of statements prepared by the plaintiff, the position taken by the defendant might be plausible. But the credible evidence discloses an entirely different situation. As already pointed out, the scaler, who represented jointly both parties, after making a record of his measurements, gave one copy of them to plaintiff's agent and the other to defendant's agent. Furthermore, defendant, shortly before being ordered to desist from further cutting, had actually prepared its own statement of the account, which was in substantial accord with the figures now relied upon by plain-

tiff, and which showed that the deposit had fallen below the stipulated minimum.

Defendant has further claimed that by reason of the change in the measurement rule, namely, the substitution of the Scribner Decimal C Rule for the Doyle Rule, it was placed at a disadvantage as respects knowledge of the precise sums due from time to time. However, this contention is not plausible in view of the fact, as shown at the trial, that defendant's agent, Mr. Apgar, was not only supplied by the plaintiff with a copy of the scaling table to be used in applying this rule, but that this rule is so simple that no instruction in its application was needed. Indeed, not even simple arithmetic is involved, because given two figures, namely, height of the tree and its diameter at mid-point, the table is so prepared as to give, at a glance, the correct footage under the rule.

[4] Since the deposit provision in the contract was of its very essence, and something which the plaintiff was entitled to rely upon, independently of other provisions in the contract, it follows that plaintiff was entirely justified in ordering defendant to refrain from any further cutting until the deposit requirement was fulfilled.

That the defendant was deliberately evading its obligations under the contract is further borne out by the following, which we believe to be established beyond question by the weight of the credible evidence: First, plaintiff's refusal to readjust the proportion which each party should bear of the scaler's total weekly wage did not justify the defendant in failing to meet the deposit requirement, because even if we assume that defendant's request with respect to the scaler's wages was reasonable, plaintiff was under no obligation to accede thereto, because it was a modification of the contract. Furthermore, defendant's own statement of its indebtedness shows a deficiency in the deposit account, even after giving credit for the entire amount which defendant claimed was plaintiff's proper share of the scaler's wages. Second, if we look clearly through form to the substance of the controversy, the inference is inescapable that defendant had found it would be unprofitable to cut the rest of the timber, because of a less marketable character, and that, therefore, it would be desirable to be relieved from further performance under the contract. This is borne out by at least two things: first, by defendant's own admission, as disclosed by the correspondence, that in July, 1938, that is, several months after the contract was made, defendant required a different class of wood from that found on the tract covered by the contract, as a result of which defendant had bought a large tract in another part of the State and was there engaged in extensive operations; and second, by the fact that the market price of the 3,313 trees that defendant had moved, while comprising less than one-eighth of all the timber covered by the contract but nevertheless representing practically all of the largest timber thereon which was suitable for sale as piling, was $3 a piece, or $9,939, while the defendant, under the contract with plaintiff, was required to pay only $3,749.40 for this lot of timber.

Lastly, with respect to the alleged breach of defendant by abandonment, enough has been said to indicate that the defendant had no right under the given circumstances to refuse to complete the contract, and that completion was never improperly interfered with by the plaintiff. As already explained, plaintiff was entirely within her rights in directing defendant to discontinue all cutting until it made up the deficiency in the deposit requirement. In short, plaintiff's direction, under date of September 30th, not to remove any more timber until the deposit requirement was met, was a totally insufficient reason for the defendant's failure to complete the contract. The weight of the credible evidence clearly suggests that defendant had no real intention, some weeks prior to the last mentioned date, of completing the contract, but was merely fabricating excuses for not doing so.

Enough has already been said to indicate that we find nothing in the conduct of the plaintiff sufficient to support the contention that the plaintiff herself has breached the contract.

For the aforegoing reasons, we find that the plaintiff is entitled to a judgment for $631.41, representing the balance still due plaintiff of the $2,500 "excess" deposit which plaintiff is entitled to recover as liquidated damages.