EASTERN AVENUE CORPORATION *v.* HUGHES

[No. 259, September Term, 1961.]

*Decided May 1, 1962.*
*Motion for rehearing filed May 31, 1962, denied June 14, 1962.*

478

The cause was argued before Brune, C. J., and Henderson, Hammond, Horney and Marbury, JJ.

*Frederick J. Green, Jr.,* with whom were *Alva P. Weaver, III,* and *Lord, Whip, Coughlan & Green* on the brief, for the appellant.

*Archie D. Williams* for the appellee.

Henderson, J., delivered the opinion of the Court.

This appeal is from a judgment recovered by a tenant against a landlord in an action to recover damages for injuries sustained when she fell over a hump or raised portion in the parking lot, adjacent to her apartment, maintained for the use in common of the tenants of the apartment house. The trial court submitted the case to a jury on the issue of contributory negligence, reserving for subsequent ruling, as a matter of law, a question as to the legal effect of a provision in the lease. Thereafter, the court denied a motion for judgment *n.o.v.*

The appellee had occupied an apartment as a tenant of the appellant from 1946 until the time of the accident, October 24, 1958. On September 29, 1954, however, she signed a lease, for one year at a rental of $72 per month, containing a clause that in default of 30 day notice by either party at the end of the term, it should "continue from year to year at the same term rental and upon the same terms and conditions * * *." The appellee admitted signing the lease but testified the manager had failed to send her a copy, and that she had never signed another one. She testified that she was paying the same rent at the time of the accident, but that it was increased to

$80 a month in April, 1959. The copy containing her signature, offered in evidence by the landlord, was not signed by it. The trial court found that the lease was not legally executed for this reason. We do not agree. Mr. Nolker, the area manager, testified that the signed copy had been kept in the files of the corporation, and that he had issued instructions to the local manager in 1954 to have leases signed by all tenants, and to see that they received copies signed by the manager on behalf of the corporation. He testified that it was the practice to retain the copies signed by the tenants and to sign other copies to be delivered to the tenants. It has been held that a copy signed by only one party is binding upon the one signing. See *Western Md. R. R. Co. v. Orendorff*, 37 Md. 328, 335. See also 1 Underhill, *Landlord & Tenant*, §§ 230, 231 and Fawcett, *Landlord & Tenant* (3d ed.), p. 180. It may be noted that even if the Statute of Frauds had required a writing, the lease in the instant case was signed by the party to be charged. Cf. *Cline v. Fountain Rock Co., Inc.*, 210 Md. 78, 88. It has also been held that where there is an entry into possession with the understanding that a written lease will be signed, a verbal contract upon the terms which the parties intended will be implied by law. *Baltimore v. Steam Packet Co.*, 164 Md. 284, 290; *Bonaparte v. Thayer*, 95 Md. 548; *Cline v. Fountain Rock Co., Inc., supra.* See also *Kikas v. Baltimore County*, 200 Md. 360, 365, and *Darling Shops v. Balto. Center*, 191 Md. 289, 293.

The lease in the instant case contained the following clause: "The Tenant covenants and agrees that the Landlord shall not be liable for any injury to his person or damages to his property occasioned by failure to keep the demised premises in repair or howsoever caused, nor shall the Landlord be responsible for any accident to the Tenant or any occupant or visitor to the premises resulting from any cause whatsoever; and Tenant agrees he will not hold Landlord responsible in any way, whether such accident occurred in any of the Landlord's buildings or on any of its property." We entertain no doubt that the language used, however strictly construed, is broad enough to cover the claim for damages in the instant case. The main reliance of the trial court was upon a con-

480

tention that the exculpatory clause was invalid as against public policy. Again, we do not agree.

Apparently, the point has not been passed upon in any previous Maryland case, although validity was assumed in *State of Maryland v. Manor Real Estate & Trust Co.*, 176 F. 2d 414, 417 (C. A. 4th). Cf. *Adamstown Canning Co. v. Baltimore & O. R.R.*, 137 Md. 199, 207. The general rule is stated in 6 Williston, *Contracts* (Rev. ed.), § 1751 C. See also Restatement, *Contracts*, §§ 574, 575; 6 Corbin, *Contracts*, § 1472, p. 869; Note 175 A.L.R. 8, 83. Almost all of the courts that have passed on the question have held exculpatory clauses valid. See *Mackenzie v. Ryan*, 41 N. W. 2d 878 (Minn.) (following *Pettit Grain v. N. P. Ry.*, 35 N. W. 2d 127, and earlier cases); *Robinson v. Tate*, 236 S. W. 2d 445 (Tenn. App.) (rule not applied in case of concealment or fraud); *Cobb v. Gulf Refining Co.*, 145 S. W. 2d 96 (Ky.); *Kansas City Stock Yards Co. v. A. Reich & Sons*, 250 S. W. 2d 692 (Mo.); *Plaza Hotel Co. v. Fine Products Corp.*, 74 S. E. 2d 372 (Ga. App.); *Inglis v. Garland*, 64 P. 2d 501 (Cal.); *Bogutz v. Margolin*, 139 A. 2d 649 (Pa.). See also *Kirshenbaum v. General Outdoor Advertising Co.*, 180 N. E. 245 (N. Y.); *McCarthy v. Isenberg Bros.*, 72 N. E. 2d 422 (Mass.); *Simmons v. Columbus Venetian Stevens Buildings*, 155 N. E. 2d 372 (Ill. App.); *O'Callaghan v. Waller & Beckwith Realty Co.*, 155 N. E. 2d 545 (Ill.). In the latter states the legislatures have subsequently enacted statutes invalidating some types of exculpatory clauses. The only state in which an exculpatory clause has been held invalid as against public policy appears to be New Hampshire. See *Papakalos v. Shaka*, 18 A. 2d 377 (N. H.). Cf. *Nashua Gummed & Coated Paper Co. v. Noyes Buick Co.*, 41 A. 2d 920, 922 (N. H.).

We are constrained to follow the great weight of authority. Cf. *Baltimore v. Md. Casualty Co.*, 171 Md. 667, 672.

*Judgment reversed, with costs, and entered in favor of the defendant for costs.*