[Civ. No. 67701. Second Dist., Div. Two. Oct. 11, 1984.]

BARBARA J. GUTHRIE, Plaintiff and Appellant, v.
AMERICAN PROTECTION INDUSTRIES et al.,
Defendants and Respondents.

**COUNSEL**

Simon, McKinsey, Miller, Zommick, Sandor & Alban, Simon, McKinsey & Miller and Gayle R. Posner for Plaintiffs and Appellants.

Steven M. O'Neal and Bonelli, Heib, Fuchs & O'Neal for Defendants and Respondents.

**OPINION**

**COMPTON, Acting P. J.**—Plaintiff Barbara J. Guthrie, doing business as Wehrman's Jewelry, appeals from the judgment of the trial court, sitting without a jury, awarding her $250 in damages for losses by theft which occurred at a time when a burglar alarm system, installed and operated by defendant American Protection Industries (API), failed to function as represented. We affirm.

The essential facts are not in dispute and may be briefly summarized as follows. On March 8, 1973, Harvey Wehrman, plaintiff's predecessor, entered into an agreement with API to install and maintain a burglary alarm system at his jewelry store in Long Beach, California. Some five years later, Mr. Wehrman died and plaintiff purchased his interest in the business from his estate. Both before and after the change of ownership, the contract with API remained in effect.

On October 24, 1979, plaintiff noticed an inappropriate clicking sound in the alarm system and notified API of a possible malfunction. The following day, service representatives from API visited the store and worked on the system for approximately 30 minutes. They advised plaintiff that the alarm had been repaired and that the system was now in good working order.

On Saturday, November 3, 1979, plaintiff closed the store at 4:30 p.m., and, as usual, activated the alarm. The following Monday, November 5, 1979, plaintiff entered the premises and discovered that the store had been burglarized by persons unknown. The burglars apparently had broken

through a wall from an adjacent store in order to enter the premises and had destroyed a number of display cases while removing various pieces of jewelry. Either of these activities should have caused the alarm system to be activated, but did not. A subsequent engineering analysis found the system to be defective.

Plaintiff brought suit against API, claiming a loss of $103,461 in stolen merchandise. In substance, the complaint alleged that API had negligently performed under its contract and had breached its expressed and implied warranties that the alarm system installed would detect a burglary.

At trial, API stipulated to breach of the contract and negligence in failing to keep the system operable. ■ After taking testimony on the issue of damages, the trial court found that paragraph 14 of the agreement executed between the parties was a valid liquidated damage provision under the holding of *Better Food Mkts.* v. *Amer. Dist. Teleg. Co.* (1953) 40 Cal.2d 179 [253 P.2d 10, 42 A.L.R.2d 580]. The trial court therefore concluded that plaintiff's damages were contractually limited to $250.[1]

In *Better Food Mkts., supra,* the Supreme Court upheld the validity of a similar liquidated damage provision limiting an alarm company's liability to $50.[2]

---

[1]Paragraph 14 of the written agreement dated March 8, 1973, provides: "*It is understood that the Contractor [API] is not an insurer; that insurance, if any, shall be obtained by the Subscriber [Wehrman's Jewelry Store]*. If Subscriber carries insurance covering the aforesaid system for loss or damage thereto caused by fire, theft, or any other losses, Subscriber shall name Contractor as loss payee, and all proceeds under such insurance shall be payable to Contractor. The amounts payable to the Contractor hereinunder are based upon the value of the services and the scope of liability as herein set forth, and are unrelated to the value of a Subscriber's property or the property of others located in Subscriber's premises. *The Contractor makes no guarantee or warranty, including any implied warranty of merchantability or fitness, that the system or services supplied will avert or prevent occurrences or the consequences therefrom, which the system or service is designed to detect. The Subscriber does not desire this contract to provide for full liability of the Contractor and agrees that the Contractor shall be exempt from liability from loss or damage due directly or indirectly to occurrences, or consequences therefrom, which the service is designed to detect or avert*; that if the Contractor should be found liable for loss or damage due to a failure of service or equipment in any respect, its liability shall be limited to a sum equal to 10% of the annual service charge, or $250.00, whichever is the greater, as liquidated damages and not as a penalty, as the exclusive remedy, and that the provisions of this paragraph apply if loss or damage, irrespective of cause or origin results directly or indirectly to person or property from performance or non-performance of the obligations imposed by this contract or from negligence, active or otherwise, of the Contractor, its agents, or employees." (Italics added.)

[2]The agreement for liquidated damages in *Better Food Markets* was as follows ". . . 'It is agreed by and between the parties that the Contractor is not an insurer, that the payments hereinbefore named are based solely on the value of the service in the maintenance of the system described, that it is impracticable and extremely difficult to fix the actual damages, if any, which may proximately result from a failure to perform such services and in case of failure to perform such services and a resulting loss its liability hereunder shall be limited to and fixed at the sum of fifty dollars as liquidated damages, and not as a penalty, and this liability shall be exclusive.'" (*Id.* at p. 184.)

At that time and at the time of the execution of the contract in this case, Civil Code section 1671 permitted liquidated damage clauses "when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

The court in *Better Food Mkts., supra,* observed that there was at the time of the execution of the contract no reasonable basis upon which to predict the nature and extent of any loss, or how much of that loss the defendant's failure of performance might account for, hence in an alarm service contract case, "the impracticability or extreme difficulty in fixing actual damages" appeared as a matter of law. (*Id.* at p. 187.)

The usual alarm system is designed to act as a deterrent in the first instance and to permit prompt detection and apprehension of the undeterred intruder. The success of such a system depends on many variables and intangibles such as the intestinal fortitude, agility, mental state, speed and skill of the burglar as well as the response time of the police, all of which are beyond the control of the installer of the system.

As we recently observed in *7735 Hollywood Blvd. Venture* v. *Superior Court* (1981) 116 Cal.App.3d 901, 905 [172 Cal.Rptr. 528]: "No one really knows why people commit crime, hence no one really knows what is 'adequate' deterrence in any given situation. While bright lights may deter some, they will not deter all. Some persons cannot be deterred by anything short of impenetrable walls and armed guards."

In summary, it is our opinion that it would be impossible in any case to prove, after the fact, that an operative alarm system would have prevented the crime. Consequently it would be impossible to prove that the failure of an alarm system *caused any damage.*

Most persons, especially operators of business establishments, carry insurance for loss due to various types of crime. Presumptively insurance companies who issue such policies base their premiums on their assessment of the value of the property and the vulnerability of the premises. No reasonable person could expect that the provider of an alarm service would, for a fee unrelated to the value of the property, undertake to provide an identical type coverage should the alarm fail to prevent a crime.

Clearly the failure of the alarm system did not *cause* the burglary with its attendant loss. The criminal propensities of the perpetrator was the direct cause. Plaintiff's claim here, in actuality, is that API failed to *prevent the crime* while under a contractual duty to do so. That no such duty existed is made absolutely clear by the terms of the contract. (Fn. 1, *supra.*)

These terms, which are considerably more expansive than those in the contract involved in *Better Food Mkts., supra,* obviate any need to discuss in detail the law pertaining to liquidated damage clauses or which party has the burden of proof in regard to such clauses.

In the final analysis, the concern with liquidated damages evidenced by the courts and Legislature over the years stemmed primarily from a desire to avoid penalties and forfeitures which often resulted from harsh liquidated damage clauses. Here we deal with what is essentially the other side of the coin, to wit, a limitation of liability under circumstances clearly warranting such a limitation.

The judgment is affirmed.

Beach, J., and Gates, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 12, 1984.