533 A.2d 1316

**Eugene SCHRIER et ux.**

v.

**BELTWAY ALARM COMPANY.**

**No. 365, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

Dec. 3, 1987.

---

Emil Hirsch (James P. Wheeler and Desco, Greenberg & Thomas, P.C., on the brief), Washington, D.C., for appellant.

Jeffrey R. DeCaro (Robert J. Farley and O'Malley, Miles & Harrell, on the brief), Upper Marlboro, for appellee.

Argued before WILNER, ALPERT, and ROSALYN B. BELL, JJ.

ALPERT, Judge.

Appellants, Eugene and Sheila Schrier, filed suit against the Beltway Alarm Co. in the Circuit Court for Prince

George's County to recover damages for injuries Mr. Schrier sustained during a robbery of Veteran's Liquors, Inc., a liquor store conducted in corporate form in which appellants were principal shareholders. The trial court held valid and enforceable a $250.00 limitation of liability provision in the parties' contract and granted summary judgment in favor of Beltway for claims in excess of that amount. Pursuant to Md. Courts & Jud.Proc.Code Ann. § 4–402 (1984), the court also dismissed appellants' claim for lack of subject matter jurisdiction, the amount in controversy having been adjudicated as being less than $500. The pertinent facts are not in dispute.

In September 1977 Mr. Schrier, on behalf of Veteran's Liquors, entered into an "Alarm Protection Agreement" with Beltway Alarm Co. for the installation and maintenance of a "central station connected hold-up" system. Appellant agreed to pay a $287.00 installation fee, and $49.50 per month for a 3–year service contract. In November 1980, the parties entered into a second contract calling for monthly payments of $65.85 for continued maintenance of the system. Both contracts contained language limiting appellee's liability in the event of loss or damage due to a breach of contract or negligence in performance by Beltway. Specific pertinent language of the controlling 1980 contract will be provided in our discussion *infra*.

Mr. Schrier was shot and severely wounded on August 31, 1981 during the course of a hold-up of his liquor store. In the suit filed against Beltway subsequent thereto, Mr. Schrier alleged that he had activated two alarm buttons during the robbery but prior to the shooting. The Schriers filed counts in negligence, breach of contract, and breach of warranty, alleging that Beltway delayed 14 minutes in notifying the police department of the alarm, and that but for this delay Mr. Schrier would not have been shot.

In this appeal, the Schriers contend that:

I. Paragraph 8 of the contract is an invalid liquidated damages clause.

II. The limitation of liability clause is void as a matter of public policy.

III. Appellants have a cause of action in negligence.

IV. Appellants are not bound by the liquidated damages provision of the contract.

We find no merit in any of appellants' theories; therefore, we affirm.

### I.

Preliminarily, we note the parties' difficulty in characterizing the nature of Paragraph 8. Although the language appears to be standard in the alarm industry, *Fireman's Fund Am. Ins. Cos. v. Burns Elec. Sec. Servs., Inc.*, 93 Ill.App.3d 298, 417 N.E.2d 131, 417 N.E.2d 131, 132 (1981), the companies' desire to "cover all the bases" by characterizing the language as both liquidated damages and a limitation of liability has no doubt contributed to the problem. As we explain, however, "there is no real distinction for present purposes between a liquidated damage clause, a limited [liability] clause and an exculpatory clause." *General Bargain Center v. American Alarm Co.*, 430 N.E.2d 407, 412 (Ind.App.1982).

Paragraph 8 of the Agreement *sub judice* provided in part:

STATUS OF PARTIES, LIMITATION OF LIABILITY, LIQUIDATED DAMAGE PROVISION AND INDEMNITY AGREEMENT.

\* \* \* \* \* \*

(b) Subscriber acknowledges that it is impractical and extremely difficult to fix the actual damages, if any, which may proximately result from a failure to perform any of the obligations herein or a failure of the system to operate because of, among other things: The uncertain amount or value of Subscriber's property or the property of others which may be lost or damaged; the uncertainty of the response time of the police or fire department; the inability to ascertain what portion, if any, of any loss

would be proximately caused by Company's failure to perform any of its obligations or failure of its equipment to operate; the nature of the services to be performed by Company;

(c) Subscriber understand [sic] and agrees that if Company should be found liable for any loss or damage due from a failure to perform any of its obligations or a failure of the equipment to operate, Company's liability shall be limited to a sum equal to the total of six monthly payments or Two Hundred Fifty Dollars ($250.00) whichever is the lesser, as liquidated damages and not as a penalty and this liability shall be exclusive and shall apply if loss or damage, irrespective of cause of origin, results directly or indirectly to persons or property from performance or nonperformance of any of the obligations herein or from negligence, active or otherwise of Company, its employees or agents; ...

Some courts have designated contract provisions similar to this as exculpatory, others as a limitation of liability, and still others label it as a liquidated damages clause. Regardless of the nomenclature, courts have uniformly upheld these contract clauses. *See, e.g., Central Alarm v. Ganem,* 116 Ariz. 74, 567 P.2d 1203 (App.1977); *Guthrie v. American Protection Indus.,* 160 Cal.App.3d 951, 206 Cal. Rptr. 834 (1984); *Bargaintown of D.C., Inc. v. Federal Eng'g Co.,* 309 A.2d 56 (D.C.App.1973); *Stefan Jewelers, Inc. v. Electro–Protective Corp.,* 161 Ga.App. 385, 288 S.E.2d 667 (1982); *Fireman's Fund Am. Ins. Cos. v. Burns Elec. Sec. Servs., Inc.,* 93 Ill.App.3d 298, 48 Ill.Dec. 729, 417 N.E.2d 131 (1980); *General Bargain Center v. American Alarm Co.,* 430 N.Ed.2d 407 (Ind.App.1982); *Alan Abis, Inc. v. Burns Elec. Sec. Servs., Inc.,* 283 So.2d 822 (La.App. 1973); *New England Watch Corp. v. Honeywell, Inc.,* 11 Mass.App. 948, 416 N.E.2d 1010 (1981); *St. Paul Fire & Marine Ins. Co. v. Guardian Alarm Co.,* 115 Mich.App. 278, 320 N.W.2d 244 (1982); *Foont–Freedenfeld Co. v. Electro–Protective Co.,* 126 N.J.Super. 254, 314 A.2d 69 (1973), *aff'd,* 64 N.J. 197, 314 A.2d 68 (1974); *Florence v.*

*Merchants Cent. Alarm Co.,* 73 A.D.2d 869, 423 N.Y.S.2d 663 (1980); *Reed's Jewelers, Inc. v. ADT Co.,* 43 N.C.App. 744, 260 S.E.2d 107 (1979); *Lobianco v. Property Protection, Inc.,* 292 Pa.Super. 346, 437 A.2d 417 (1981); *Vallance & Co. v. DeAnda,* 595 S.W.2d 587 (Tex.Civ.App.1980); *but see Samson Sales, Inc. v. Honeywell, Inc.,* 12 Ohio St.3d 27, 465 N.E.2d 392 (1984).

Appellants first characterize paragraph 8 as a liquidated damages clause and argue that it is invalid because it provides for a penalty. Although we disagree with appellants' characterization of the disputed language, *see infra* at 289, we will address their argument because the enforceability of any type of limitation of damages clause with respect to a contract for a burglar alarm system is a question of first impression in Maryland. Exculpatory clauses and liquidated damages clauses have been upheld in other contexts, however, and are helpful to our determination of this case.

In the seminal case regarding exculpatory clauses, *Winterstein v. Wilcom,* 16 Md.App. 130, 293 A.2d 821, *cert. den.,* 266 Md. 744 (1972), this court upheld an exculpatory agreement that relieved Wilcom of all liability for negligent conduct relating to activities at the "75–80 Drag–A–Way," a track where "automobile timing and acceleration runs were conducted on two racing lanes." Although Drag–A–Way had employees in a tower to detect any hazards on the track, no one warned Winterstein of a "cylinder head approximately 36″ long, 6″ wide and 4″ high, weighing approximately 100 pounds ... which was not visible to him when he commenced the race" but was visible to the employees in the tower. Winterstein hit the cylinder, lost control of the car, jumped a ditch, drove up an embankment and turned over. He sustained "serious, painful and permanent injuries." *Id.* at 133, 293 A.2d 821. Winterstein sued Wilcom, d/b/a Drag–A–Way for his injuries, alleging negligence. On the basis of the exculpatory "Release" signed by Winterstein, the trial court entered summary judgment

for Drag–A–Way. Affirming the summary judgment, we explained:

It is clear that the exculpatory provisions involved in the case before us whereby Winterstein expressly agreed in advance that Wilcom would not be liable for the consequences of conduct which would otherwise be negligent were under the general rule recognizing the validity of such provisions. There was not the slightest disadvantage in bargaining power between the parties. Winterstein was under no compulsion, economic or otherwise, to race his car. He obviously participated in the speed runs simply because he wanted to do so, perhaps to demonstrate the superiority of his car and probably with the hope of winning a prize. This put him in no bargaining disadvantage. . . .

The short of it is that as to the releases here the effect of the exemptive clauses upon the public interest was nil. We find that each release was merely an agreement between persons relating entirely to their private affairs. In the absence of a legislative declaration, we hold that they were not void as against public policy.

*Id.* at 138–39, 293 A.2d 821.

 Likewise, it is well-settled that liquidated damage clauses are recognized and enforced in Maryland. *Blood v. Gibbons,* 288 Md. 268, 418 A.2d 213 (1980); *Cowan v. Meyer,* 125 Md. 450, 94 A. 18 (1915). The parties to a contract may stipulate to a specific amount of damages to be recovered by either for a breach of the agreement by the other. *Traylor v. Grafton,* 273 Md. 649, 332 A.2d 651 (1975). Breach of the contract, not an injury sustained by the other party, imposes the liability to pay the contractual damages. *Id.; Cowan, supra.* If, however, as appellants herein argue, the contract provision is actually intended as a penalty, it will not be enforced. *Id.* The following statement of the rule is still the law today:

[W]here the parties, at or before the time of the execution of the contract, agree upon and name a sum therein to be paid as liquidated damages, in lieu of anticipated damages

which are in their nature uncertain and incapable of exact ascertainment, the amount so named in the agreement will be regarded as liquidated damages and not as a penalty, unless the amount so agreed upon and inserted in the agreement be grossly excessive and out of all proportion to the damages that might reasonably have been expected to result from such breach of the contract. And whether it is excessive or whether the damages are incapable of exact ascertainment should be determined from the subject matter of the contract considered in the light of all the surrounding facts and circumstances connected therewith and known to the parties at the time of its execution. That these questions should be considered and determined from the contract itself, its subject-matter and the surrounding facts and circumstances connected therewith with which the parties are confronted at the time of its execution, is made necessary in order to ascertain the intention of the parties, which is one of the essential factors in deciding whether the stipulation is for liquidated damages or is a penalty. It may afterwards be disclosed that the damages actually sustained are more or less than those anticipated at the time of the execution of the contract. If more, this fact would not characterize or stamp the stipulation as a penalty unless it was so exorbitant as to clearly show that such amount was not arrived at in a *bona fide* effort, made at or before the execution of the contract, to estimate the damages that might have been reasonably expected to result from a breach of it, and that it was named as a penalty for such breach. And on the other hand, if the amount stipulated was found to be inadequate, a greater amount could not be recovered for such breach, because of the agreement between the parties that the amount so named should be in lieu of the damages resulting therefrom.

*Baltimore Bridge Co. v. United Rwys. & Elec. Co.*, 125 Md. 208, 214–15, 94 A. 18 (1915). *See Traylor v. Grafton, supra; Blood v. Gibbons, supra.*

■ Paragraph 8(b) of the agreement *sub judice* address-
es the parties' inability to ascertain the extent of the
damages that might be incurred as a result of a failure of
the alarm system. This difficulty was recognized by courts
outside Maryland, *see, e.g., Better Food Mkts., Inc. v.
American Dist. Tel. Co.*, 40 Cal.2d 179, 253 P.2d 10, 15
(1953) ("The impracticability or extreme difficulty in fixing
actual damages appeared as a matter of law."); *Fireman's
Fund Am. Ins. Cos. v. Burns Elec. Sec. Servs., Inc.*, 93
Ill.App.3d 298, 48 Ill.Dec. 729, 417 N.E.2d 131, 132 (1981)
("The chance of a burglary and the potential loss depended
not only on the quality of the alarm but on many factors
peculiar to Henry Kay [plaintiff's insured] and within Hen-
ry Kay's knowledge and control."); *Vallance & Co. v.
DeAnda*, 595 S.W.2d 587, 590 (Tex.Civ.App.1980) ("The
possible consequences of a breach by a burglar alarm
company are numerous . . . [and] the nature and extent of a
future loss [are] difficult to predict."). *See also Abel
Holding Co. v. American Dist. Tel. Co.*, 138 N.J.Super. 137,
350 A.2d 292 (1975) (Discussing the difficulty of fixing
amount of future damages for failure of *fire alarm* sys-
tem). We agree with the reasoning of these courts and find
no merit in appellants' argument that paragraph 8 is invalid
as a penalty.

■ Its caption notwithstanding,[1] we conclude that the
contract clause at issue is a "limitation of liability" and not
liquidated damages. Although every valid agreement for
liquidated damages operates as a form of limitation, a
contractual limitation of liability to an agreed maximum
should be distinguished from a penalty or liquidated dam-
ages. 5A *Williston on Contracts* § 781A (3d ed. 1961).
Liquidated damages is a "specific sum of money agreed
upon as the amount of damages to be recovered for a

---

1. It is well settled that the nomenclature used by the parties to
describe the limitation is not dispositive, but is merely one factor to
be considered in construing the contract. *Traylor v. Grafton*, 273 Md.
649, 332 A.2d 651 (1975).

breach of the agreement." *Traylor,* 273 Md. at 661, 332 A.2d 651. This distinction was also noted in *Restatement of Contracts* § 339, comment g (1932):

> An agreement limiting the amount of damages recoverable for breach is not an agreement to pay either liquidated damages or a penalty. Except in the case of certain public service contracts, the contracting parties can by agreement limit their liability in damages to a specified amount, either at the time of making their principal contract, or subsequently thereto.

■ Although paragraph 8 refers to "liquidated damages," the obvious purpose of the provision is clearly to limit Beltway's liability to the specified $250.00 amount. The controlling language is contained in subsection (c):

> if Company should be found liable for any loss or damage due from a failure to perform any of its obligations or a failure of the equipment to operate, *Company's liability shall be limited to* a sum equal to the total of six monthly payments or Two Hundred Fifty Dollars ($250.00) whichever is the lesser, as liquidated damages and not as a penalty.

Thus, unlike a true liquidated damages clause, under a "limitation of liability" clause: (1) damages, not merely breach of contract, must be proved; and (2) liability varies according to the extent of the injury up to the stated maximum. *See Central Alarm v. Ganem,* 116 Ariz. 74, 567 P.2d 1203, 1207 (App.1977) ("if the loss to the customer was $150, the expressed mutual assent was that recovery should be $150 and not $312," [the company's maximum liability under the contract]); *accord General Bargain Center v. American Alarm Co.,* 430 N.E.2d 407, 411 (Ind.App.1982); *Vallance & Co. v. DeAnda,* 595 S.W.2d 587, 590 (Tex.Civ. App.1980).

■ Unlike a liquidated damages clause, it is immaterial whether a limitation of liability is a reasonable estimate of probable damages resulting from a breach. 5A *Williston on Contracts,* § 781A (3d ed. 1961); *Vallance & Co. v.*

*DeAnda,* 595 S.W.2d at 590. A limitation of liability is not a penalty "in that it does not normally operate *in terrorem* to induce proper performance." *Williston, supra; Restatement of Contracts* § 339, comment g.

As we noted in our discussion on liquidated damages, the amount stated in the contract will be held invalid as a penalty only if it is "grossly excessive and out of all proportion to the damages that might reasonably have been expected to result from such breach of the contract." *Baltimore Bridge Co. v. United Rwys. & Elec. Co.,* 125 Md. 208, 214–15, 94 A. 18 (1915). Rather than a harsh penalty, what we confront *sub judice* is "essentially the other side of the coin, to wit, a limitation of liability under circumstances clearly warranting such a limitation." *Guthrie v. American Protection Indus.,* 160 Cal.App.3d 951, 955, 206 Cal.Rptr. 834 (1984).

■ Appellants also contend that the disputed clause is unconscionable, in particular because personal injury is involved. Citing Md. Comm. Law Code Ann. § 2–719(3) and dicta in *Fireman's Fund American Insurance Cos. v. Burns Electronic Security Services, Inc.,* 93 Ill.App.3d 298, 48 Ill.Dec. 729, 417 N.E.2d 131, 134 (1981) ("The case might be different had the alarm done or threatened personal injury, which has a special place in the law."), appellants argue that "the limitation [is] particularly abhorrent" in the face of personal injuries. Thus, appellants urge this court to adopt a dual standard: one for property damage and another for personal injury.

Clearly § 2–719(3) is inapplicable to the case at bar because consumer goods are not involved.[2] Nor has the Maryland Legislature seen fit to declare invalid limitations on liability for personal injury except in agreements between landlord and tenant. *See* Md. Real Prop. Code Ann.

---

**2.** Inasmuch as we need not decide whether we deal with a sale or service, we take no position on whether § 2–719(3) is otherwise applicable.

§ 8–105 (1981).[3] This invalidation of some exculpatory clauses in residential leases was enacted in response to *Eastern Ave. Corp. v. Hughes,* 228 Md. 477, 180 A.2d 486 (1962), in which the Court of Appeals upheld a lease clause which relieved the landlord of liability for injuries to the tenant and for damage to the tenant's property. The legislature to date has not extended this prohibition to agreements other than between landlords and tenants.

■ Nor do we find this limitation of liability unconscionable for any other reason. In affirming a summary judgment for the defendant alarm company in an analogous case, the Court of Appeals of Michigan reasoned:

> This is not an individual versus a monopoly. Here, both parties to the contract are corporations dealing at arms length.... The contract clause limiting defendant's liability to the aggregate of six monthly payments or $250 is manifestly reasonable under the circumstances of this case. Defendant is not in the insurance business. Rather, it provides an alarm service for a specific sum. That sum is not a premium for theft insurance.

*St. Paul Fire & Marine Ins. Co. v. Guardian Alarm Co.,* 115 Mich.App. 278, 320 N.W.2d 244, 247 (1982). Similarly, the Court of Appeals of California stated:

> [I]t is our opinion that it would be impossible in any case to prove, after the fact, that an operative alarm system would have prevented the crime. Consequently, it would be impossible to prove that the failure of an alarm system *caused any damage.*
>
> Most persons, especially operators of business establishments, carry insurance for loss due to various types of crimes. Presumptively insurance companies who issue such policies base their premiums on their assessment of the value of the property and the vulnerability of the

---

**3.** *Winterstein v. Wilcom,* 16 Md.App. 130, 134–35, 143, 293 A.2d 821 (1972).

premises. No reasonable person could expect the provider of an alarm service would, for a fee unrelated to the value of the property, undertake to provide an identical type coverage should the alarm fail to prevent a crime. *Guthrie v. American Protection Indus.*, 160 Cal.App.3d 951, 954, 206 Cal.Rptr.3d 951 (1984) (emphasis in original).

The reasoning of both the California and Michigan Courts of Appeal is applicable equally to the limitation of liability clause at bar. Paragraph 8(a) provides:

(a) It is understood and agreed by the parties hereto that Company is not an insurer and that insurance, if any, covering personal injury and property loss or damage on Subscriber's premises shall be obtained by the Subscriber; that the payments provided for herein are based solely on the value of the service as set forth herein and are unrelated to the value of Subscriber's property or the property of others located on Subscriber's premises; that Company makes no guarantee or warranty including any implied warranty of merchantability or fitness that the system or service supplied will avert or prevent occurrences or the consequence therefrom which the system or service is intended to detect or prevent; ...

We conclude that the parties reached a "commercially sensible arrangement," and we will not rewrite their agreement to compel the appellee to act as an insurer. The agreement is not one "such as no man in his senses and not under delusion would make on the one hand, and no honest and fair man would accept on the other. *Earl of Chesterfield v. Janssen*, 2 Ves.Sr. 125, 28 Eng.Rpr. 82 (1750)." *Abel Holding Co. v. American Dist. Tel. Co.*, 138 N.J.Super. 137, 350 A.2d 292, 303–04 (1975); *See Stefan Jewelers, Inc. v. Electro–Protective Corp.*, 161 Ga.App. 385, 288 S.E.2d 667, 670 (1982); *Fireman's Fund Am. Ins. Co. v. Burns Elec. Sec. Servs.*, 93 Ill.App.3d 298, 48 Ill.Dec. 729, 417 N.E.2d 131, 133 (1981). The agreement *sub judice*, therefore, is valid and binding on the appellants.

## II.

Appellants argue next that the limitation clause is invalid as a "transaction affected with a public interest." In *Winterstein v. Wilcom*, 293 A.2d 821, 16 Md.App. 130 (1972), this court adopted, from the Supreme Court of California, the following six factor test to determine whether a particular transaction involves an invalid exculpatory provision. We quoted:

> [T]he attempted but invalid exemption involves a transaction which exhibits some or all of the following characteristics. It concerns a business of a type generally thought suitable for public regulation. The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public. The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards. As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services. In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence. Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents.

*Id.* at 137, 293 A.2d 821 quoting *Tunkl v. Regents of the Univ. of Calif.*, 60 Cal.2d 92, 32 Cal.Rptr. 33, 383 P.2d 441 (1963).

Appellants argue that "there is a strong public interest in protecting the innocent public from burglars by the use of properly operating alarm systems," and that

"there is a strong public concern in protecting business establishments from being forced to accept contracts of adhesion offered by alarm companies." Our application of the *Winterstein* test to the facts at bar, however, leads us to conclude that paragraph 8 is not invalid for public policy reasons. First, the burglar alarm business is not one deemed suited for public regulation. The local Prince George's County regulations referred to by appellant regulate the electrical work involved in the installation of the system. As appellee notes, the underlying intent of the regulations appears to be compliance with electrical codes, and the avoidance of false alarms that result in the needless summoning of the police. *See* Prince George's County Code § 9–130 *et seq.*

We do not consider the installation and maintenance of a burglar alarm system an "essential" service, although we do not dispute its importance. The burglar alarm industry is not performing a police function or public service. Although a shopkeeper may desire additional protection from crime, other alternatives such as a security guard or a special bullet proof enclosure for employees are available. Furthermore, the shopkeeper may purchase insurance that will compensate him for property loss and personal injury. Indeed, even the policy at bar offered appellants an opportunity to purchase additional coverage. Paragraph 8(d) provides:

> In the event that the subscriber wishes Company to assume greater liability, Subscriber may, as a matter of right, obtain from Company a higher limit by paying an additional amount to Company, and a rider shall be attached hereto setting forth such higher limit and additional amount, but this additional obligation shall in no way be interpreted to hold Company as an insurer. . . .

Appellants chose not to avail themselves of this right.

We conclude, therefore, that the parties were not in an unequal bargaining position and the contract, although pre-

printed and standardized, was not one of adhesion. Appellants had alternatives, and they entered the contract after full opportunity to consider the alternatives and study the terms of the contract. In addition, the contract contained a disclaimer of warranties in paragraph 21 which appeared in bold-face type. Finally, we do not find that appellants were "under the control of" the appellee within the meaning of the *Winterstein* test.

We hold that a contract for the installation and maintenance of a burglar alarm does not enter the realm of public utilities, common carriers, and those businesses that have been held to "affect the public interest." The limitation of liability clause, therefore, is valid.

### III.

Appellants next allege a separate cause of action in negligence. We conclude, however, that this issue is also controlled by the parties' contract. Paragraph 8(c) clearly limits appellee's liability to a maximum of $250 for personal injury or property loss resulting "from performance or nonperformance of any of the obligations herein *or from negligence,* active or otherwise of Company, its employees or agents...."

■ Inasmuch as we have recognized that there is no public policy against a party's contracting against liability for damage caused by his ordinary negligence, *Boucher v. Riner,* 68 Md.App. 539, 514 A.2d 485 (1986); *Winterstein v. Wilcom,* 16 Md.App. 130, 293 A.2d 821 (1972), our discussion upholding the limitation of liability under parts I and II, *supra,* apply with equal force to the issue of negligence. *Accord Central Alarm v. Ganem,* 116 Ariz. 74, 567 P.2d 1203 (App.1977).

■ Appellants' reliance on *DCR Inc. v. Peak Alarm Co.,* 663 P.2d 433 (Utah 1983), is misplaced. In *DCR,* the

court held the alarm company liable in negligence because, unlike the contract at bar, the DCR liquidated damages clause did not limit non-contractual liability. The court stated that "the [liquidated damages] provision contains no expression of an intent of the parties to limit defendants' prospective liability in tort." *Id.* at 437. *DCR*, therefore, is clearly distinguishable from the case at bar.

## IV.

In their final argument, appellants contend that they are not parties to the contract; the contract was between Veteran's Liquors and Beltway Alarm. They argue, therefore, assuming *arguendo* the limitation of liability is valid, they are not individually bound. We find no merit to this argument.

Appellants are the principal shareholders of Veteran's Liquors, they admitted in their brief that Veteran's Liquors is their privately owned company, and Mr. Schrier executed the contract on behalf of the company. Functionally and effectively, appellants are "Veteran's Liquors," and are individually bound by the terms of the contract.

Moreover, even if we accept appellants' argument, at most appellants are third party beneficiaries under the contract. The Court of Appeals explained the rule concerning third party beneficiaries as follows:

[I]n this State, a person for whose benefit a contract is made can maintain an action upon it. But before one can do so it must be shown that the contract was intended for his benefit; and, in order for a third party beneficiary to recover for a breach of contract it must clearly appear that the parties intended to recognize him as the primary party in interest and as privy to the promise. An incidental beneficiary acquires by virtue of the promise no right against the promisor or the promisee. "In order to recover it is essential that the beneficiary shall be the real

promisee; i.e., that the promise shall be made to him in fact, though not in form. It is not enough that the contract may operate to his benefit. It must clearly appear that the parties intend to recognize him as the primary party in interest and as privy to the promise."

*Marlboro Shirt Co. v. American Dist. Tel. Co.*, 77 A.2d 776, 196 Md. 565, 569 (1951) (citations omitted). Thus, even if appellants were the intended beneficiaries under the subject contract (which we need not decide), they have no greater rights than Veteran's Liquors.

Since an intended beneficiary's [the Schriers'] right is based on the contract between the promisor [Beltway] and the promisee [Veteran's Liquors], it is generally subject to any defenses and claims of the promisor [Beltway] against the promisee [Veteran's Liquors] arising out of that contract.... These include nonoccurrence of a condition and failure of performance, whether the failure is a breach or is justifiable.

Farnsworth, *Contracts* § 10.7 (1982). Thus, even as intended beneficiaries, the Schriers are bound by the limitation of liability clause in the contract. "So far as we are aware, it has never been held that a third party for whose benefit a contract was made had any greater or more extensive right than existed by the terms of the contract...." Williston, *Williston on Contracts* § 378 (1979). *See Shillman v. Hobstetter*, 249 Md. 678, 241 A.2d 570 (1967); *District Moving & Storage Co. v. Gardiner & Gardiner, Inc.*, 63 Md.App. 96, 492 A.2d 319 (1985).

Inasmuch as the contract limited appellee's liability for damages arising out of breach of contract or negligence, the Schriers, even as third party beneficiaries, have no independent cause of action in tort or contract against Beltway.

JUDGMENT AFFIRMED; APPELLANTS TO PAY THE COSTS.