[No. E006615. Fourth Dist., Div. Two. Mar. 4, 1992.]

DAVID HELM et al., Plaintiffs and Appellants, v.
K.O.G. ALARM COMPANY, INC., Defendant and Respondent.

## COUNSEL

Wolfe, Hecht, Riskin, Eisenhart & Smith and Mervyn L. Hecht for Plaintiff and Appellant.

Furness, Middlebrook & Kaiser, Furness, Middlebrook, Kaiser & Higgins and Floyd F. Fishell for Defendant and Respondent.

## OPINION

TIMLIN, J.—Plaintiffs David and Deborah Helm (the Helms) appeal from the judgment of nonsuit which was entered against them in the instant matter pursuant to section 581c of the Code of Civil Procedure, arguing that their cause of action for fraud/intentional misrepresentation against defendant K.O.G. Alarm Company, Inc. (the alarm company) should have been allowed to go to the jury for deliberation and decision. We conclude that the trial court was correct in entering the judgment of nonsuit and, consequently, we affirm the same.

 FACTS[1]

In 1977, the Helms decided that they needed a burglar alarm system installed in their residential mobilehome to protect the large amount of personalty they had accumulated there. The alarm company was recommended to them for this work by Mrs. Helm's father. Indeed, it was Mrs.

---

[1]In gleaning the facts which underlie this action from the appellate record, we have been guided and constrained by the legal standards which attend the granting and review of judgments of nonsuit. In particular:

(1) "It has become the established law of this state that the power of the court to direct a verdict is absolutely the same as the power of the court to grant a nonsuit. A nonsuit or a directed verdict may be granted only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such a verdict were given. [Citations.] Unless it can be said as a matter of law, that, when so considered, no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to reverse it upon appeal, or the trial court to set it aside as a matter of law, the trial court is not justified in taking the case from the jury." (*Estate of Lances* (1932) 216 Cal.397, 400 [14 P.2d 768], internal quotation marks omitted.)

(2) "In an appeal from a judgment of nonsuit, the reviewing court is guided by the same rule requiring evaluation of the evidence in the light most favorable to the plaintiff. The judgment of the trial court cannot be sustained unless interpreting the evidence most favorably to plaintiff's case and most strongly against the defendant and resolving all presumptions, inferences and doubts in favor of the plaintiff a judgment for the defendant is required as a matter of law. [Citations.] [¶] Although a judgment of nonsuit must not be reversed if plaintiff's proof raises nothing more than speculation, suspicion, or conjecture, reversal is warranted if there is some substance to plaintiff's evidence upon which reasonable minds could differ. [Citations.] Only the grounds specified by the moving party in support of its motion should be considered by the appellate court in reviewing a judgment of nonsuit. [Citations.]" (*Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830, 839 [206 Cal.Rptr. 136, 686 P.2d 656], internal quotation marks omitted.)

Helm's father who contacted the alarm company and made arrangements for the installation of a burglar alarm system at the Helms' mobilehome.[2]

A short time thereafter, the alarm company installed a burglar alarm system in the Helms' mobilehome. In very basic terms, the system was the sort that sensed unauthorized entry into a guarded area and signalled a remote dispatch office (maintained by the alarm company) in the event of any such entry. Mrs. Helm was at home during the installation of the system, but she did not ask the installer any questions concerning the particulars of the system. When Mr. Helm arrived home from work that evening, the installer was still there and Mr. Helm went over the particulars of the system with him. Mr. Helm specifically asked the installer what would happen if the telephone line to which the alarm system was connected were to be severed in any manner.[3] The installer assured Mr. Helm that any such severance in the telephone line would activate an alarm signal at the alarm company's dispatch office, that that alarm signal would be treated as if it were signalling an unauthorized entry, and that the local law enforcement agency would be notified immediately of the "break in." A few days later, the alarm company provided a written contract to the Helms for their signature.[4] Mrs. Helm signed the contract.

In truth, the burglar alarm system which was installed in the Helms' mobilehome was such as would be rendered inactive and inoperable by a severance of the telephone line to which it was connected. No alarm would be signalled in the alarm company's dispatch office in the event of such a severance. Mrs. Helm later testified that she (they, the Helms) never would have contracted with the alarm company for the subject burglar alarm system had they understood that the system would be rendered inoperable by a simple severance of the telephone lines.

During the early morning hours of February 8, 1983, while the Helms were away from their residence on a business trip, their mobilehome was burglarized and set afire. No alarm signalling the burglarious break in was ever received by the alarm company's dispatch office and, consequently, no notification of the same was ever made by the alarm dispatch office to the

---

[2]There is no evidence that either the Helms themselves or Deborah Helm's father specified or requested any particular alarm system features in ordering the installation of the burglar alarm system.

[3]Our use of the word "sever" in this opinion, in several of its forms, is to be understood in its broadest sense, as being synonymous with "separate," rather than in its narrower sense of being synonymous with "slice" or "cut."

[4]The contract contained provisions relating to the lease of the alarm system itself to the Helms and other provisions relating to the monthly monitoring services which were to be provided by the alarm company.

local law enforcement agency. By the time emergency personnel responded to the fire, the mobilehome, together with its contents, was almost completely destroyed.

The Helms, working together with law enforcement personnel and others, were thereafter able to determine that a number of items appeared to have been stolen from the mobilehome prior to the fire. Further, the fire appeared to have been intentionally set. The telephone lines to which the burglar alarm system had been connected were found to have been severed.[5]

The Helms brought the instant action against the alarm company—alleging that the alarm company had intentionally misrepresented the features of the subject burglar alarm system to the Helms, that they never would have entered into the agreement with the alarm company if they had known the truth about the burglar alarm system's features (or, more accurately, lack of features), that they relied on the representations made by the alarm company in deciding to lease and to continue to utilize the alarm system which was installed and that they never would have suffered the theft/arson losses they in fact suffered if the alarm company had provided an alarm system consistent with its representations.[6]

Following the presentation of the Helms' case-in-chief, the alarm company moved for a judgment of nonsuit pursuant to section 581c of the Code of Civil Procedure, basing its motion on the ground that the Helms had failed to prove that the (alleged) misrepresentation had actually caused any damage or harm to them.[7] The trial court preliminarily granted the motion, subject to a reopening of the case-in-chief by the Helms. The Helms did reopen their case-in-chief. Following the brief presentation of some additional evidence, the Helms once again rested, and the alarm company once again moved for a judgment of nonsuit.

The trial court granted the alarm company's motion, agreeing with the alarm company that the Helms had failed, both as a matter of fact and as a

---

[5]Later trial testimony by one of the investigating police officers that the telephone lines had been "pulled out" was objected to on the ground that the testimony was speculative, an objection which was sustained by the trial court. While there is a dearth of evidence in the record as to *how* the telephone lines might have been severed, there seems to be universal agreement that the lines *were* severed.

[6]The Helms' complaint originally contained a variety of causes of action but, by the time the matter reached trial, only a second amended complaint stating a cause of action for intentional misrepresentation remained.

[7]Although the alarm company's motion for a judgment of nonsuit was not a model of clarity, it appears that it was, in fact, a two-part motion: (1) The Helms had failed to adduce sufficient evidence to establish a *cause-in-fact* nexus between the alleged misrepresentation and the burglary/arson damages; and (2) there is, *as a matter of law*, no causal nexus that exists between the failure of an alarm system to operate as promised and losses which are occasioned by the criminal acts of third parties.

matter of law, to establish a causal nexus between their theft/arson losses and the failure of the burglar alarm system to operate as represented. (See fn. 7, *ante*.) The trial court thereafter entered a judgment of nonsuit in the alarm company's favor and this appeal ensued.

Additional facts will be referred to, as needed, in the discussion which follows.

## DISCUSSION

■ As noted in the *Carson* opinion (see fn. 1, *ante*), in reviewing the propriety of the trial court's granting of the alarm company's motion for a judgment of nonsuit, we are to consider only those grounds relied upon by the alarm company in making that motion—and as we have noted ourselves in this opinion (see fn. 7, *ante*), those grounds appear to be twofold: an alleged failure by the Helms to show a causal nexus between the asserted misrepresentation and the asserted damages both (a) as a matter of law and (b) as a matter of fact. We address each of these grounds in turn.

### A. Causation as a Matter of Law.

■ The alarm company argued, and the trial court agreed, that a causal nexus between the failure of a protective alarm system to operate as represented and losses occasioned by the criminal acts of third parties could not, as a matter of law, be established. In taking this position, both the alarm company and the trial court relied almost exclusively on the opinion in *Guthrie* v. *American Protection Industries* (1984) 160 Cal.App.3d 951 [206 Cal.Rptr. 834], at page 954: "In summary, it is our opinion that it would be impossible in any case to prove, after the fact, that an operative alarm system would have prevented the crime. Consequently, it would be impossible to prove that the failure of an alarm system *caused any damage*." We have two distinct concerns about following *Guthrie*'s line of reasoning in the case at hand:

(1) *Guthrie* seems to suggest that only proof that a crime would have been *prevented* by the operation of an alarm system would allow the conclusion that a failure of that system "caused" any damage. We do not agree. *Guthrie*'s reasoning seems to completely overlook the rather basic concept of a *mitigation* of damages. While it is one thing (and undoubtedly correct) to state as a categorical matter that alarm systems cannot be said to absolutely prevent crime, it is quite another thing to make a blanket statement that properly operating alarm systems cannot lessen the loss occasioned by criminal acts. In the case before us, it is possible (hypothetically) that an

alarm system with the features the subject alarm system was represented to have would have allowed the proper emergency response personnel to (a) scare away the burglar before he or she did anything or, at least, before the criminal acts were completed, (b) capture the burglar and recover the stolen items and/or (c) put out the fire before it caused as great a degree of damage as it did.

(2) *Guthrie* concerns a breach of contractual warranty/negligence action. The action before us in this case, on the other hand, concerns an intentional tort. Whatever the particular definition of "cause" may be in cases such as *Guthrie* (see *Mitchell* v. *Gonzales* (1991) 54 Cal.3d 1041 [1 Cal.Rptr.2d 913, 819 P.2d 872]), the definition of "cause" in cases involving intentional torts appears much broader: "Indeed, it appears that many of the limitations upon liability that are subsumed under the doctrine of 'proximate cause,' as usually expounded in negligence cases, do not apply to intentional torts." (*Tate* v. *Canonica* (1960) 180 Cal.App.2d 898, 904 [5 Cal.Rptr. 28].)[8] (4) Rather, the general rule appears to be that: "The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss suffered by one who justifiably relies upon the truth of the matter misrepresented, if his reliance is a substantial factor in determining the course of conduct that results in his loss." (Rest.2d Torts, § 546.) In this case, the Helms justifiably relied on the representations made by the alarm company in deciding to utilize the subject alarm system rather than seek out a system of greater protective capacity—and this reliance was a substantial factor in the subsequent course of events that led to the Helms' suffering an unmitigated loss rather than a loss that might well have been mitigated by the type of alarm system the Helms had explicitly inquired about.

We conclude that a plaintiff is not precluded *as a matter of law* from attempting to prove a "causal nexus" between (a) an intentional misrepresentation that induces him (the plaintiff) to rely on a protective emergency

---

[8]We refer simply to "cause" to avoid the semantic difficulties which attend the use of the phrases "proximate cause" and "legal cause." (See *Mitchell* v. *Gonzales, supra,* 54 Cal.3d 1041.) It seems to us that the clearer and better course would be to refer to what we know as "cause-in-fact" as either "actual cause" or "factual cause" while referring to what we know as "proximate cause"—that is, cause-in-fact as qualified and tempered by what Justice Kennard called, in her insightful dissent in *Mitchell,* the "social evaluative process" (54 Cal.3d at p. 1058), that needed process by which the law seeks "to limit liability when cause and effect relationships logically continue to infinity" (54 Cal.3d at p. 1057)—as "legal cause."

We suggest this use of the phrase "legal cause" in accord with the observation applied to it in Black's Law Dictionary (6th ed. 1990): "The words 'legal cause' are used throughout the Restatement of Torts to denote the fact that the causal sequence by which the actor's tortious conduct has resulted in an invasion of some legally protected interest of another is such that the law holds the actor responsible for such harm unless there is some defense to liability."

The problem with this approach, of course, is that the phrase "legal cause" is already being used by BAJI No. 3.76 to refer to cause-in-fact. (See *Mitchell, supra,* 54 Cal.3d at p. 1044, fn. 2.)

service alarm system which has lesser capabilities than represented and (b) later occurring losses directly occasioned by the criminal acts of third parties.

*B. Causation as a Matter of Fact.*

 In this case, notwithstanding the trial court's view of the *Guthrie* opinion and its ultimate application of that opinion to the evidence presented by the Helms in their case-in-chief, the Helms *were* given an opportunity to prove (by a preponderance of the evidence and to the satisfaction of the trier of fact) that there was a factual causal nexus between their reliance on the intentional misrepresentations made by the alarm company and the unmitigated theft/arson losses which they suffered. The Helms failed utterly to do so.

At the very least, such proof would have to consist of:

(1) Evidence of how long it would have taken (a) the unauthorized entry, (b) the thievous ransacking of the residence, (c) the setting of the fire and (d) the involvement of the mobilehome in fire to unfold. Obviously, this sort of proof is going to consist largely of expert "reconstruction" testimony based on an examination of the contents of the mobilehome and of the crime situs itself.

(2) Evidence of how long it would have taken various emergency response units to reach the crime situs if the represented system had been in place and operating.[9] This evidence would necessarily have to relate to the particular time when the burglary occurred—and would include specific evidence not only of "average response times" but also of "worst case scenario times."

(3) An expert's consideration and correlation of the evidence adduced under (1) and (2), above, and his or her consequent opinion as to what extent the damage which was suffered would have been mitigated or eliminated if the represented system had been in place and operating.

(4) Finally, expert financial testimony to place a precise value on the damage mitigation which would have been afforded the Helms if the represented system had been in place and operating.

*None* of the above evidence was adduced during trial by the Helms.

---

[9] The subject system was never represented as being, or understood to be, anything other than a burglar alarm system. Fire unit response times, then, would have been dependent on police units first going to the residence and then calling for a fire suppression response.

 ██ The trial court was entirely correct in granting the alarm company's motion for judgment of nonsuit. The Helms' case-in-chief completely failed to prove any cause-in-fact nexus between the Helms' reliance on the alleged intentional misrepresentation made by the alarm company and the theft/arson losses suffered by them.[10]

## DISPOSITION

The judgment entered below is affirmed in full.

Dabney, Acting P. J., and McDaniel, J.,* concurred.

A petition for a rehearing was denied March 27, 1992, and appellants' petition for review by the Supreme Court was denied May 20, 1992.

---

[10]Almost as a seeming afterthought, the Helms have argued on appeal that, at the least, they should be able to rescind the alarm system lease contract on the basis of the alarm company's (alleged) misrepresentation and obtain restitution of all monies paid to the alarm company under that contract. In support of this argument, the Helms point to a comment made by the trial court which seems to refer to a rescission demand made by the Helms to the alarm company at the beginning of the trial. This argument does not have merit.

Whatever the Helms may have done at the outset of trial, the record clearly discloses that they (a) prayed in their complaint only for tort damages for the (alleged) misrepresentation and never moved the trial court for leave to amend their complaint to allege facts in support of an action for rescission and to set forth a prayer for restitution and (b) sought tort damages for the (alleged) misrepresentation throughout the conduct of the trial itself. By their conduct, the Helms elected to pursue a tort remedy and waived their right to pursue the equitable contract remedy of rescission/restitution. As is often the case, the clearest statement of the law has been made by Witkin: "If, however, the defrauded party elects to affirm [the contract] and recover damages, and fails to establish his right, the rule is different. Having affirmed the contract, he cannot thereafter attempt to rescind." (5 Witkin, Summary of Cal. Law (9th ed. 1988), Torts, § 727, at p. 827, citing *Gutterman* v. *Gally* (1933) 131 Cal.App. 647, 653 [21 P.2d 1000], and *Bancroft* v. *Woodward* (1920) 183 Cal. 99, 101 [190 P. 445].)

*Retired Associate Justice of the Court of Appeal, Fourth District, sitting under assignment by the Chairperson of the Judicial Council.